1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5  UNITED STATES OF AMERICA,        )
                                    )
6                PLAINTIFF,         )
                                    )
7          vs.                      ) No. CR 17-0404-AB
                                    )
8  1) ARLAN WESLEY HARRELL,         )
   2) JOHN RICHARD BRINSON, JR.,    )
9  3) MOISES MARTINEZ,              )
   4) KEITH ALLEN LAWNICZAK,        )
10                                   )
                 DEFENDANTS.        )
11 _____ )

12

13

14          REPORTER'S TRANSCRIPT OF PROCEEDINGS

15             MONDAY, AUGUST 28, 2017

16                  1:44 P.M.

17             LOS ANGELES, CALIFORNIA

18              PAGES 1 THROUGH 19

19             PAGES 29 THROUGH 33

20             PAGES 48 THROUGH 54

21

22 _____

23        **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
           FEDERAL OFFICIAL COURT REPORTER
24        350 WEST FIRST STREET, ROOM 4311
           LOS ANGELES, CALIFORNIA 90012
25              cmjui.csr@gmail.com

```
1    APPEARANCES OF COUNSEL:

2    FOR THE PLAINTIFF:

3            OFFICE OF THE UNITED STATES ATTORNEY
             BY: VANESSA BAEHR-JONES
4            ASSISTANT U.S. ATTORNEY
             312 NORTH SPRING STREET, 13TH FLOOR
5            LOS ANGELES, CALIFORNIA 90012
             (213) 894-2434
6
     FOR THE DEFENDANT HARRELL:
7
             OFFICE OF THE FEDERAL PUBLIC DEFENDER
8            BY: PEDRO V. CASTILLO
             DEPUTY FEDERAL PUBLIC DEFENDER
9            321 EAST 2ND STREET
             LOS ANGELES, CALIFORNIA 90012
10           (213) 894-2854

11   FOR THE DEFENDANT BRINSON:

12           GREGORY NICOLAYSEN, ATTORNEY AT LAW
             27240 TURNBERRY LANE, SUITE 200
13           VALENCIA, CALIFORNIA 91355
             (818) 970-7247
14
     FOR THE DEFENDANT MARTINEZ:
15
             LAW OFFICE OF SCOTT S. FURSTMAN
16           BY:  SCOTT S. FURSTMAN, ATTORNEY AT LAW
             1190 SOUTH BASCOM AVENUE, SUITE 213
17           SAN JOSE, CALIFORNIA 95128
             (650) 400-9008
18
             LAW OFFICE OF GEORGE C. KASOLAS
19           BY:  GEORGE C. KASOLAS, ATTORNEY AT LAW
             1190 SOUTH BASCOM AVENUE, SUITE 213
20           SAN JOSE, CALIFORNIA 95128
             (408) 998-9000
21
     FOR THE DEFENDANT LAWNICZAK:
22
             THOMAS NISHI, ATTORNEY AT LAW
23

24   ALSO PRESENT:  HSI SPECIAL AGENT DIANE ASATO

25
```

```
 1              LOS ANGELES, CALIFORNIA; MONDAY, AUGUST 28, 2017

 2                            1:44 P.M.

 3                              - - -

 4              THE CLERK:  Calling CR 17-0404-AB, United States

 5    of America versus Arlan Wesley Harrell; John Richard

 6    Brinson, Jr,; Moises Martinez; Keith Allen Lawniczak.

 7              Counsel, please state your appearances for the

 8    record.

 9              MS. BAEHR-JONES:  Good afternoon, Your Honor.

10              Vanessa Baehr-Jones on behalf of the

11    United States, and with me at counsel table is HSI

12    Special Agent Diane Asato.

13              THE COURT:  Good afternoon to you both.

14              Mr. Castillo.

15              MR. CASTILLO:  Yes, good afternoon, Your Honor.

16              Pedro Castillo on behalf of Arlan Wesley Harrell

17    who is present in custody next to me, Your Honor.

18              THE COURT:  All right.

19              MR. NICOLAYSEN:  Good afternoon, Your Honor.

20              Greg Nicolaysen appearing as counsel of record for

21    Defendant John Brinson who is also present.

22              THE COURT:  Good afternoon.

23              MR. FURSTMAN:  Good afternoon, Your Honor.

24              Scott Furstman on behalf of Moises Martinez who is

25    present.  Co-counsel is present, lead counsel, George
```

```
 1   Kasolas.

 2              MR. KASOLAS:  George Kasolas present.

 3              THE COURT:  Good afternoon.

 4              MR. NISHI:  Good afternoon, Your Honor.

 5              Thomas Nishi on behalf of Keith Lawniczak who is

 6   present in custody.

 7              THE COURT:  Good afternoon.  Nice to see you,

 8   Mr. Nishi.  It's been awhile.

 9              All right.  So we're here for a number of things.

10   Well, an arraignment on the First Superseding Indictment, I

11   guess that's as it relates to Mr. Harrell.  And then there

12   is also a status conference as it relates to all of the

13   defendants in the case.

14              And then a bail review request has been made for

15   Mr. Harrell as well as Mr. Lawniczak.

16              Why don't we first proceed with the First

17   Superseding Indictment as it relates to Mr. Harrell.

18              Mr. Harrell, I will just ask you, if you could, is

19   Arlan Wesley Harrell your true and correct name?

20              DEFENDANT HARRELL:  Yes, sir.

21              THE COURT:  All right.  So have you -- well, you

22   are here in part because of there has been a Superseding

23   Indictment that has been filed charging you with a violation

24   of laws of the United States.

25              Have you received a copy of that Superseding
```

1    Indictment?

2          DEFENDANT HARRELL:  Yes, Your Honor.

3          THE COURT:  Now, you have a right, if you like,

4    for me to read the Indictment to you in open court.

5          Do you want me to read the Indictment in open

6    Court?

7          DEFENDANT HARRELL:  No, Your Honor.

8          THE COURT:  So you waive reading of that -- you

9    waive reading of the Indictment; correct?

10         DEFENDANT HARRELL:  I do, Your Honor.

11         THE COURT:  As it relates to the Superseding

12   Indictment -- just bear with me one moment.  I don't have --

13         Ms. Baehr-Jones, is Mr. Harrell charged in all

14   counts of the Superseding Indictment?

15         MS. BAEHR-JONES:  No, Your Honor.

16         THE COURT:  Which counts is he charged in, if you

17   know?

18         MS. BAEHR-JONES:  If you give me one moment,

19   Your Honor.

20         THE COURT:  Take your time.

21         MS. BAEHR-JONES:  He is charged in Counts 1,

22   Counts 2 through 12, and Count 17.

23         THE COURT:  All right.

24         So, Mr. Harrell, how do you plead to Counts 1,

25   Counts 2 through 12 and Count 17 of the Superseding

```
 1    Indictment?   Guilty or not guilty?

 2              DEFENDANT HARRELL:   Not guilty.

 3              THE COURT:   Thank you.

 4         I accept the not guilty plea.   We have jury trial

 5    dates.   We have got a number of staggered jury trial dates.

 6              In fact, I believe yours is scheduled for

 7    tomorrow.   I am going to assume, based on the Superseding

 8    Indictment, we're not going to proceed to trial tomorrow.

 9              And in light of the fact that we have all the

10    defendants here today, I expect that we'll have a new date

11    for trial.   So all right.   Thank you very much, sir.

12              Miss Baehr-Jones, would you mind, to the extent

13    possible, could you give me a brief recap -- well, I know

14    the basic facts of the case.   I'm more concerned about, sort

15    of, what's new in the Superseding Indictment.

16              MS. BAEHR-JONES:   Yes, Your Honor, if I may have

17    one moment just to speak with defense counsel.

18              THE COURT:   Yes, please.

19         (Brief pause in the proceedings.)

20              MS. BAEHR-JONES:   Thank you, Your Honor.

21              The new -- the Superseding Indictment charges a

22    child exploitation enterprise having to do with Website A

23    which is a Website devoted to the child exploitation of

24    children between the ages of zero to five years old.

25              It alleges the defendants' involvement in
```

```
1    conspiring to produce child pornography, to distribute child
2    pornography through posts and activity on this Website.  In
3    addition, it alleges counts of production of child
4    pornography against Defendants 1, 2, and 3.
5            It alleges a count of child sex trafficking
6    against Defendant 4.  It alleges destruction of evidence
7    against Defendant 4.  It also alleges the -- I believe
8    that's it.  Yes, Your Honor, thank you.
9            THE COURT:  Correct me if I am wrong.  I seem to
10   recall from the first status conference there were already
11   in the Indictment some counts that carried mandatory
12   minimums; correct?
13           MS. BAEHR-JONES:  That's correct, Your Honor.
14           THE COURT:  Does the Superseding Indictment now
15   add additional counts that carry mandatory minimums?
16           MS. BAEHR-JONES:  It does, Your Honor.
17           So, for instance, the child exploitation
18   enterprise carries a 20-year mandatory minimum.  There is a
19   count against Defendant Number 1, a 2251 big A count that
20   carries a 30-year mandatory minimum.  The child sex
21   trafficking count carries a 15-year mandatory minimum, and
22   then all of the production of child pornography counts carry
23   a 15-year mandatory minimum as well.
24           THE COURT:  What is the status as it relates to
25   the production of discovery?
```

```
 1            In light of the case -- I believe I signed an

 2   order, protective order, sealing some of this information,

 3   but please enlighten me.

 4            MS. BAEHR-JONES:  Yes, Your Honor.

 5            Defendants -- I believe that the Court has signed

 6   protective orders for Defendants 1 and 2.  I believe there

 7   is a stipulation for Defendant 3 that is still pending.

 8   There is one that's still pending, I believe.

 9            And with Defendant 4, the government is still in

10   negotiation over that stipulation.  That should cover the

11   victim/witness information that's not contraband; so

12   everything that relates to victims but not child

13   pornography.

14            The government has done an initial production to

15   Defendant Number 1 because that was the first order that

16   issued.

17            Based on the volume of that production, the

18   government has requested that defense counsel now provide

19   thumb drives or hard drives, and the government is in the

20   process of producing production set to Defendant Number 3,

21   and we're waiting for thumb drives or hard drives from

22   Defendants 2 and 4.

23            THE COURT:  What are we talking about volumewise

24   as far as the production?  You are saying thumb drives.  Are

25   we talking about gigabytes?  Terabytes?
```

1        MS. BAEHR-JONES:  We're talking gigabytes,

2   Your Honor.  It's mainly video that's taking up the volume

3   because there were a number of interviews of child victims

4   in this case.

5        And the remainder of the evidence the government

6   is in the process of discussing with defense counsel how

7   they would like to view the child pornography and whether

8   they would like -- at what point they would like to set up

9   an Adam Walsh review where their forensic experts can access

10  it as well.

11       THE COURT:  I seem to recall there's allegation of

12  statements made by one or more of the defendants in this

13  case.  Is that true?

14       MS. BAEHR-JONES:  Yes, Your Honor.  One or more of

15  the defendants had made statements.

16       THE COURT:  Were those video or audio taped?

17       MS. BAEHR-JONES:  All of them were either video or

18  audio recorded.

19       THE COURT:  Is that part and parcel of the

20  discovery of the information that's going to be put on the

21  thumb drives that will be turned over?

22       MS. BAEHR-JONES:  Yes, Your Honor.

23       THE COURT:  All right.

24       I will start with you, Mr. Castillo.  What, if

25  anything, do you need from the Court at this time with

```
1   respect to discovery?  Obviously, we're going to deal with
2   the bail issue momentarily, but what else, if anything, do
3   you need at this time?
4            MR. CASTILLO:  Your Honor, at this time I can't
5   think of anything.  I have received about 21 CD's recently
6   from the government, password protected.  I'm in the process
7   of, obviously, viewing those and determining what's all
8   there.  We did also get an index of the discovery from the
9   government.
10            So at this point I think we just have to sort
11   through all of it.  I don't think anything is necessary.  I
12   did sign the protective order.
13            THE COURT:  Great.  Thank you.
14            Mr. Nicolaysen, what, if anything, do you need
15   from the Court at this time?
16            MR. NICOLAYSEN:  Your Honor, I think discovery
17   production is moving along.  I would ask the Court to
18   consider ordering or setting a deadline for the government
19   to produce experts to the defense especially in light of our
20   discussion of the trial date today.
21            I understand the government may be looking for an
22   earlier date than the defense would ask Your Honor.  So I
23   think the earlier we can get expert disclosure gives us a
24   window for any potential Daubert litigation.
25            THE COURT:  What trial dates were you all
```

```
 1   contemplating?  I'm not trying to hold anyone to it, but I
 2   show trial dates -- the furthest trial date I show is
 3   October 17th.  Were you all anticipating a date beyond that?
 4   Or is that still subject of negotiation?
 5           MS. BAEHR-JONES:  Your Honor, I have spoken to --
 6   at this point sounds like several defense counsel are
 7   available in January and February, but most recently
 8   Mr. Nicolaysen indicated that March would be the earliest he
 9   would be available.
10           The government is amenable to potentially a March
11   trial date, but, past that, the government will likely not
12   be willing to stipulate because of the fact that there are
13   child victims in the case.
14           THE COURT:  Let's assume that it's a date sometime
15   in early 2018.
16           What about Mr. Nicolaysen's request with respect
17   to expert disclosure?  I am assuming at this stage you know
18   or have pretty much narrowed down who your experts would be.
19   Is that a fair statement?
20           MS. BAEHR-JONES:  That's a fair statement,
21   Your Honor.
22           I think this case, honestly, depending on which
23   defendants decide to proceed to trial and how that trial
24   ends up looking, the amount of expert testimony is going to
25   vary.  So -- but certainly within six weeks before trial the
```

```
 1   government could make its full expert disclosure.

 2            THE COURT:  Mr. Nicolaysen, do you think that

 3   would be adequate a time for you?  Sounds reasonable to me,

 4   but I am just curious what's your gut reaction to that

 5   proposal?

 6            MR. NICOLAYSEN:  If Your Honor is inclined to set

 7   a trial date in March, I would certainly agree to an expert

 8   disclosure in early January.

 9            THE COURT:  Okay.  All right.  Thank you.

10            Anything else, Mr. Nicolaysen, at this point that

11   you need?

12            MR. NICOLAYSEN:  Not at all, no.  Thank you,

13   Your Honor.

14            THE COURT:  Let's move on.  Okay.

15            Mr. Kasolas or Mr. Furstman, anything from you

16   all?

17            MR. KASOLAS:  We are still awaiting our initial --

18            THE COURT:  Can you stand, please, because I can't

19   hear you.

20            MR. KASOLAS:  I am sorry.  We're still awaiting

21   our initial discovery, Your Honor.

22            THE COURT:  Okay.  Have you provided a thumb drive

23   to the government?

24            MR. KASOLAS:  We have.

25            THE COURT:  Okay.
```

```
 1              MR. KASOLAS:  We have been in discussion with the
 2    U.S. Attorney, and we anticipate that it should be in the
 3    mail some time this week to us.
 4              THE COURT:  Is that how we're doing this, in the
 5    mail?
 6              MS. BAEHR-JONES:  Yes, Your Honor.  This is
 7    non-contraband.  So this is -- the government can mail it.
 8              THE COURT:  All right.  Great.
 9              Last but not least, Mr. Nishi, where are you with
10    respect to discovery?  Have you provided a thumb drive?  Are
11    you awaiting something back?
12              MR. NISHI:  My client was just arraigned last
13    week; so I'm not in a position to say that thumb drive or
14    our drive has been provided to the government.
15              I will say -- or I will ask the Court consider --
16    I know it's difficult -- but transferring my client to a
17    place where he could have access.
18              He is in San Bernardino jail, and we have
19    absolutely no access to computers and stuff that will allow
20    him to review the discovery.  I was wondering if the Court
21    might recommend that he be transferred to MDC.
22              THE COURT:  All right.
23              Any objection to that from the government?
24              MS. BAEHR-JONES:  Well, Your Honor, there are --
25    my understanding is Bureau of Prisons has separated the
```

 1  defendants in this case.

 2          The other consideration here is, to the extent

 3  there is reviewable discovery, the bulk of the discovery in

 4  this case is either contraband or is covered by the

 5  protective order which cannot be left with defendants in the

 6  custodial facilities.

 7          So I don't believe we're talking about such a

 8  large amount of data that a defendant couldn't have those

 9  hard paper copies to review.

10          Again, per the terms of the protective order, I

11  don't believe that the material could just be left on

12  computers.

13          THE COURT:  Mr. Nishi, I need to think about this

14  only because -- well, we've got four individuals that are

15  charged here.

16          I don't want to make a recommendation that's going

17  to run afoul or cause logistical -- or I should say concerns

18  having all of these folks in the same location if there is

19  indeed a separation order.

20          I just want to clarify.  Presumably, as it relates

21  to the contraband, you are going to be reviewing that with

22  your client; correct?

23          MR. NISHI:  If I can.

24          THE COURT:  Will there be any issue of you doing

25  that or reviewing the discovery in San Bernardino?  That's

 1 | the question.

 2 |         MR. NISHI:  Yes.  It's basically just a small

 3 | little cell, and there is difficulty bringing computers into

 4 | that particular facility, the West Valley Detention Center.

 5 |         THE COURT:  Okay.  Let me take that under

 6 | submission.  I just want to make sure I think this through

 7 | before I come to decision with respect to that request.

 8 |         Anything further, Mr. Nishi?

 9 |         MR. NISHI:  No, Your Honor.

10 |         THE COURT:  Miss Baehr-Jones.

11 |         MS. BAEHR-JONES:  If I may be heard on that

12 | matter, Your Honor.  With respect to contraband, it is

13 | unusual for defendants to review that.

14 |         And in order for them to review that, they have to

15 | be transported to a government facility.  So either the

16 | U.S. Attorney's office or forensic lab with -- if they're in

17 | custody with marshals and with the agents taking them there.

18 | It -- contraband is not reviewed in jail facilities.

19 |         THE COURT:  Thank you for clarifying that.  I

20 | appreciate it.

21 |         All right.  So I think we've resolved -- I should

22 | say we've dealt with the status conference.

23 |         Like I said, I am going to take under submission

24 | the request to have Mr. Lawniczak transferred to another

25 | facility.

```
 1              So I guess now why don't we deal with the bail
 2   review as it relates to Mr. Harrell.
 3              Mr. Castillo, do you wish to proceed at this time?
 4              MR. CASTILLO:  Yes, Your Honor.
 5              Your Honor, we're asking that the Court reconsider
 6   the detention in this case.  I think the Court has looked at
 7   the presentence report -- I'm sorry, the Pretrial Services
 8   report.
 9              My client is young.  He's 23 years old.  He has no
10   prior criminal history.  His family who had been with him
11   through this whole process is present here in court, his
12   mother and his father.
13              His father is a city worker, drives a bus in the
14   LAX area, works for the City, makes approximately a hundred
15   thousand dollars.
16              His mother runs a day care business.  They're
17   modest people with modest means, but they're willing to sign
18   appearance bonds in the amount of $25,000 each for a total
19   of $50,000, $50,000 bond.
20              This is a very difficult case, Your Honor.  I
21   think the Court has already heard some of the evidence from
22   the government, and I know that the charges are indeed
23   particularly serious.
24              My client is charged with a 30-year mandatory
25   minimum charge.  So if convicted it would be a 30-year
```

 1   sentence for a 23-year-old man, a young man.

 2           But I think, Your Honor, in this case, the Court

 3   can fashion conditions of -- such that bail can be set.

 4           I have additional information, but quite frankly I

 5   would rather proffer that to the Court either in camera or

 6   perhaps at sidebar.

 7           THE COURT:  All right.  Well, let me hear from the

 8   government first, and then I will have you approach at

 9   sidebar so we can deal with that information.

10           I think I know what the government's position is.

11   You submitted a filing, I believe it was on Friday, late

12   Friday of -- but I will allow you to articulate further.

13           MS. BAEHR-JONES:  Thank you, Your Honor.

14           The government, the government's filings was with

15   respect to Defendant Number 4.  So the government has not

16   submitted a filing with respect to Defendant Number 1, but

17   the government would proffer the Pretrial Services report

18   and its recommendation of detention, the Complaint against

19   Defendant Number 1 in this case which lays out quite a bit

20   of evidence, as well as the Indictment in the first

21   Superseding Indictment.

22           The government's position is that defendant is an

23   extreme danger.  He has targeted -- at this point law

24   enforcement has identified 15 minor victims that he

25   specifically targeted and abused.

 1          Many of these victims are preverbal and have no

 2    ability to disclose what happened to them.  It is simply too

 3    dangerous to have somebody who targets preverbal two year

 4    olds, one year olds, three year olds out in the community.

 5          Additionally, the defendant is requesting to be

 6    released to the very same residence in which much of this

 7    abuse occurred, and so the government's position is that's

 8    simply not a safe place, that there is no conditions, set of

 9    conditions, for defendant living in this residence to be

10    monitored sufficiently to protect the community.

11          It is clear from the conduct that occurred here

12    that defendant was able to engage in this very severe abuse

13    without family members perceiving it or knowing about it.

14    So the sense that somehow releasing him to family members

15    would be sufficient is just not the case here.

16          Defendant's conduct as laid out in the Indictment

17    includes taking minors to other cities where they were

18    abused or jointly abused by other defendants in this case.

19    This is just the type of egregious child abuse that

20    cannot -- should not result in defendant having a chance to

21    be out and about.

22          This was also presumption case.  And although the

23    Pretrial Services report does believe that there are

24    conditions that would mitigate the flight, the government

25    would submit that the defendant is now facing a 30-year

1    mandatory minimum, and his guidelines are life.  And given

2    just the extreme penalties here, there is certainly the

3    incentive for the defendant to flee.

4             Moreover, this is -- the Website that's named in

5    the indictment is part of an international conspiracy.  So

6    there are other members across the United States, across the

7    world that defendant was in contact with through this

8    Website.  And the government submits that goes to flight as

9    well, those contacts.

10            With that, unless the Court has further questions,

11   the government would submit.

12            THE COURT:  No.  I will just have the parties

13   approach sidebar so I can allow Mr. Castillo to be heard

14   further.

15            MR. NICOLAYSEN:  Thank you, Your Honor.

16       (Pages 20 through 28 heard at sidebar ordered sealed by

17        the Court.)

18                              --oOo--

19

20

21

22

23

24

25

```
 1            (The following was held in open court.)

 2            THE COURT:  All right, Counsel.  Thank you both

 3  for the argument.  This is an application for the conditions

 4  of release.

 5            It's basically a de novo review of the

 6  magistrate's findings.  I have considered the

 7  Pretrial Services report and both recommendations.

 8            Look, this is a very difficult case.  The charges

 9  are quite serious, and the penalties are quite serious.

10            So in considering all of those things on whether

11  to detain defendant or if there are conditions of release, I

12  have considered the circumstances of this offense, quite

13  egregious.

14            There are some significant mandatory minimum time

15  that this defendant is exposed to.  I have considered, at

16  least, the allegations and, at least, the proffer of the

17  government.  I have also considered Mr. Harrell's history

18  and the fact that he has no criminal record.

19            Having said that, I believe that, in totality in

20  considering the nature and the seriousness of the danger to

21  the people to community particularly young children, I find

22  that there is no condition that could provide -- that will

23  give the Court comfort and that the community would be

24  protected as well as his appearance.

25            So I do find that the Court has proven by clear
```

 1    and convincing evidence that Mr. Harrell is a danger to the

 2    community, and, therefore, I am going to deny Mr. Harrell's

 3    request for -- to modify the bond, and he will remain

 4    detained.

 5           Thank you, Mr. Castillo.

 6           MR. CASTILLO:  One final thing.

 7           The sidebar that we had, can that be under seal,

 8    Your Honor?

 9           THE COURT:  Yes.  I will order that the sidebar

10    transcript of the proceedings be under seal.

11           MR. CASTILLO:  Nothing further.

12           THE COURT:  I believe the next issue is the bail

13    review as it relates to Mr. Lawniczak.

14           Mr. Nishi, do you want to step to the lectern and

15    be heard.

16           MR. NISHI:  Your Honor, we have present in front

17    of the Court Mr. Lawniczak who is, basically, a 53-year-old

18    gentleman who has never suffered any blemish on his record.

19    He doesn't have any convictions whatsoever, not even for a

20    misdemeanor.

21           At the time of his arrest, he was gainfully

22    employed, employed during his entire lifetime, went through

23    school to gain his license.

24           He's done everything that one would expect a

25    responsible citizen to have done.  And he has contacts in

 1    the city in which he resides -- Fresno.  So I don't believe

 2    that there is any indication that he is a risk to flee.

 3            We are asking for a 50,000 property bond.  There

 4    is an individual by the name of Ray Snow (phonetic) who is

 5    willing to put up his property, which I think speaks volumes

 6    for his confidence that Mr. Lawniczak would be present and

 7    obey all laws that the Court sets down for him if released.

 8            THE COURT:  Miss Baehr-Jones, do you wish to be

 9    heard?  You did submit papers as it relates to this

10    defendant.  I did review them today as well as the exhibits

11    that you attached thereto.

12            I have not -- you have made an application that

13    that document be filed under seal, and I will sign that

14    today.  I just had not had a chance I don't believe -- I

15    don't think we have been able to process it prior to the

16    hearing.

17            MR. NISHI:  Your Honor, the last thing I wanted to

18    say was -- I'm sorry.  I should have added -- was that

19    originally it was recommended that he be released when he

20    was originally picked up in Fresno.

21            THE COURT:  I did note that.  There was a

22    recommendation by pretrial of $50,000 appearance bond.

23    However, the magistrate judge in that district, in essence,

24    did not accept that recommendation, and he was detained.  So

25    I do remember reading that.

```
 1            MR. NISHI:  Now we're asking for 50,000 property
 2   bond.
 3            THE COURT:  Thank you.
 4            Miss Baehr-Jones.
 5            MS. BAEHR-JONES:  Thank you, Your Honor.
 6            Just to be clear, I spoke with the AUSA in Fresno,
 7   and my understanding from talking to that AUSA was that the
 8   pretrial -- that he presented the facts that are in the
 9   exhibits and in the filing that the government had and that
10   information had not been presented to pretrial when they
11   made their initial recommendation.
12            But nevertheless, the Magistrate Court there did
13   order the defendant detained.
14            The government has submitted a number of the facts
15   as to Defendant Number 4 and the arguments.  It's worth
16   it -- Your Honor, if the Court has questions about any of
17   the government submissions, the government would be happy to
18   address that at this point.
19            THE COURT:  Mr. Nishi, I will pose this to you.
20            I do have some questions about the factual
21   scenario.  Do you want to approach sidebar?
22            MR. NISHI:  Yes.
23            THE COURT:  All right.
24   \\\
25   \\\
```

1          (Pages 34 through 47 heard at sidebar ordered sealed by

2      the Court.)

3                              --oOo--

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

```
 1          (The following was held in open court.)
 2          THE COURT:  Counsel, thank you both for the
 3   argument on both sides.  Again, very difficult and
 4   challenging case.  I have considered the Pretrial Services
 5   report, the arguments on both sides both in open court and
 6   at sidebar, and the nature and circumstances of the offense,
 7   the weight of the evidence at least as alleged by the
 8   government, the history and characteristics of Mr. Lawniczak
 9   who, again, like Mr. Harrell, no criminal history
10   whatsoever.
11          And in the case of Mr. Lawniczak -- I shouldn't
12   say and in addition because it was similar with Mr. Harrell
13   but also has at least someone who is willing to sign a bond.
14          I have considered all that, but, again, I just
15   find that the circumstances of this case, the allegations
16   that have been made, I believe there are no conditions of
17   release that will reasonably assure the appearance of
18   Mr. Lawniczak as required and that will protect the safety
19   of other persons in the community.
20          So based on that, the request to modify the
21   conditions will -- is denied and Mr. Lawniczak is ordered
22   detained.
23          Mr. Nishi, as it relates to your request to have
24   Mr. Lawniczak housed somewhere else, I'm reticent.  In fact,
25   I'm not inclined to do that at this time only because I
```

 1   don't know the circumstance of where the other individuals

 2   are housed, and I don't want to create a scenario that

 3   quite, frankly, may be harmful to both you and your client

 4   by having him moved somewhere else that may not be in his

 5   best interests.

 6           So I guess what I would ask of you, to the extent

 7   that you feel this is important -- I'm not suggesting that

 8   you don't feel it's important now -- I need a little more

 9   information to be better able to ascertain a way that I can

10   get you exactly what you need.

11           I want to make sure -- Mr. Lawniczak deserves to

12   have meaningful representation, and you are an excellent

13   lawyer in your own right.  So I just want to make sure I do

14   what I can to assist in that regard without, sort of,

15   without causing some other, sort of, issues by housing him

16   elsewhere.

17           My request to you is, if there is something more

18   specific that you need, if you could submit that to me in

19   writing so that I could consider it and then I will make the

20   decision and see if there is a way that we can accommodate

21   you.  All right, sir?

22           MR. NISHI:  I will contact the Marshal's office to

23   find out.  Thank you, Your Honor.

24           THE COURT:  Anything further as it relates to this

25   case from the government?  Ms. Baehr-Jones?

```
 1              MS. BAEHR-JONES:  No, Your Honor.  The government
 2    was anticipating that we would discuss trial dates at this
 3    status conference.
 4              THE COURT:  If you want, we can do that right now.
 5              MR. NICOLAYSEN:  Yes, Your Honor, I will ask the
 6    Court take oral waivers.
 7              THE COURT:  Shouldn't we pick a date yet?  A date
 8    now?
 9              MR. NICOLAYSEN:  Yes.
10              THE COURT:  What date are we talking about?
11         Mr. Nicolaysen, I think you heard the government
12    say "We're willing to work with you," but after March it's
13    going to be a problem.
14              And so, for lack of a better term, this is, sort
15    of, your shot here.  So if you all are thinking about a
16    March date, can you meet and confer briefly.  Or, if not, I
17    can have you all submit a stipulation for a different date.
18              MR. NICOLAYSEN:  Your Honor, defense counsel are
19    comfortable with a date in March.  It may or may not work
20    for the defense as we get closer to that date, but I think
21    that's a reasonable projection as to the litigation
22    requirements of this case between now and then.
23              THE COURT:  All right.  But you heard the
24    government has expressed concerns that, when we start
25    getting beyond March, given the harnessing the resources and
```

 1    specifically the victims, that's going to be a problem.

 2              I mean, I'd like to accommodate you all.

 3    March 13th looks like a great date for this Court, but I'm

 4    not inclined to go much further than that.

 5              So I am asking you all to look at your respective

 6    calendars now to see if you have anything in the weeks

 7    before or the weeks thereafter that may cause a challenge

 8    with that date.

 9              Do you want a moment to do that?

10              MR. NICOLAYSEN:  Let's confer.  I don't think we

11    will be agreeing on anything earlier.

12              THE COURT:  Right.

13              MR. NICOLAYSEN:  But is Your Honor suggesting that

14    we should go beyond March because it looks like a one-time

15    shot?

16              I think we're comfortable with the middle of

17    March.  If necessary we will file a motion if a stipulation

18    is not available and we do need more time.  But I think

19    mid-March is the consensus of defense counsel.

20              MR. CASTILLO:  Agreed.

21              MR. NICOLAYSEN:  Court had indicated March 13th?

22              THE COURT:  Yes.  My calendar shows March 13th.

23              MR. NICOLAYSEN:  We collectively ask the Court to

24    set March 13th, and I would ask if oral waivers could be

25    taken so, if Your Honor does want a stip, it can be signed

```
 1   only by counsel.

 2           THE COURT:  Let me make sure I get the names

 3   correctly.  Mr. Harrell, Mr. Brinson, Mr. Martinez, and

 4   Mr. Lawniczak, you have the right to a speedy trial within

 5   75 days of your initial appearance.  Okay?

 6           That is a right that only you all can waive.  Now,

 7   your lawyers have asked to go beyond that 75-day period

 8   because they need time to prepare this case for trial.

 9           I am sure, if you are paying attention, the

10   government has indicated they got some evidence, some

11   volumes of evidence that they need to turn over to your

12   lawyers.  Your lawyers are going to need to look at them.

13           They're going to need to talk with you about them,

14   and you all are going to need to prepare a defense for your

15   case.

16           And so I am going to ask you all individually if

17   you are okay with moving the trial date beyond the 75 days

18   to -- the date we're proposing is March 13th of 2018.

19           Mr. Harrell, are you okay with moving the trial to

20   March the 13th of 2018?

21           DEFENDANT HARRELL:  I am, Your Honor.

22           THE COURT:  Mr. Brinson?  Are you okay with moving

23   the trial date to March the 13th of 2018?

24           DEFENDANT BRINSON:  Yes, sir.

25           THE COURT:  All right.
```

```
 1              Mr. Martinez, are you okay with moving the trial
 2    date to March the 13th of 2018?
 3              DEFENDANT MARTINEZ:  Yes, Your Honor.
 4              THE COURT:  All right.  And, Mr. Lawniczak, are
 5    you okay moving the trial to March the 18th, 2018 -- March
 6    the 13th of 2018?
 7              DEFENDANT LAWNICZAK:  Yes, sir.
 8              THE COURT:  All right.  So all I would ask for you
 9    all is if you could prepare a stipulation.  Your clients
10    don't need to sign it.  The attorneys can sign in lieu of
11    that so that we have it on the docket.
12              Anything further, Miss Baehr-Jones?
13              MS. BAEHR-JONES:  No, Your Honor.
14              THE COURT:  Anything from the defense at all?
15              MR. CASTILLO:  Nothing.
16              MR. NICOLAYSEN:  Thank you for the Court's time.
17         (Proceedings concluded at 2:35 p.m.)
18                           --oOo--
19
20
21
22
23
24
25
```

```
 1                        CERTIFICATE

 2

 3       I hereby certify that pursuant to Section 753,

 4  Title 28, United States Code, the foregoing is a true and

 5  correct transcript of the stenographically reported

 6  proceedings held in the above-entitled matter and that the

 7  transcript page format is in conformance with the

 8  regulations of the Judicial Conference of the United States.

 9

10  Date:  January 17, 2021.

11

12

13

14                   __/S/ CHIA MEI JUI _____

15                   Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```