1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5  UNITED STATES OF AMERICA,      )
                                  )
6              PLAINTIFF,         )
                                  )
7          vs.                    ) No. CR 17-0404-AB
                                  )
8  3) MOISES MARTINEZ,            )
                                  )
9              DEFENDANT.         )
   _____)

10

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14              FRIDAY, SEPTEMBER 17, 2021

15                    2:07 P.M.

16              LOS ANGELES, CALIFORNIA

17

18

19

20

21

22  _____

23          **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
            FEDERAL OFFICIAL COURT REPORTER
24          350 WEST FIRST STREET, ROOM 4311
            LOS ANGELES, CALIFORNIA 90012
25              cmjui.csr@gmail.com

```
 1    APPEARANCES OF COUNSEL:

 2    FOR THE PLAINTIFF:

 3           OFFICE OF THE UNITED STATES ATTORNEY
             BY: DEVON MYERS
 4           ASSISTANT U.S. ATTORNEY
             312 NORTH SPRING STREET, 13TH FLOOR
 5           LOS ANGELES, CALIFORNIA 90012
             (213) 894-2434
 6                       - AND -
             U.S. DEPARTMENT OF JUSTICE
 7           CHILD EXPLOITATION AND OBSCENITY SECTION
             BY:  LAUREN KUPERSMITH
 8           1301 NEW YORK AVENUE, NW, 11TH FLOOR
             WASHINGTON, D.C., 20530
 9           (202) 514-1564
                         - AND -
10           U.S. DEPARTMENT OF JUSTICE
             CHILD EXPLOITATION AND OBSCENITY SECTION
11           BY:  KYLE REYNOLDS
             950 PENNSYLVANIA AVENUE, NW
12           WASHINGTON, D.C., 20530
             (202) 514-2000
13

14    FOR THE DEFENDANT MARTINEZ:

15           LAW OFFICE OF SCOTT S. FURSTMAN
             BY:  SCOTT S. FURSTMAN, ATTORNEY AT LAW
16           1631 WILLOW STREET, SUITE 100
             SAN JOSE, CALIFORNIA 95125
17           (650) 400-9008
                         - AND -
18           LAW OFFICE OF GEORGE C. KASOLAS
             BY:  GEORGE C. KASOLAS, ATTORNEY AT LAW
19           1190 SOUTH BASCOM AVENUE, SUITE 213
             SAN JOSE, CALIFORNIA 95128
20           (408) 292-0200

21

22

23

24

25
```

```
 1   ALSO PRESENT:

 2           HSI SPECIAL AGENT JOHN KUZMA

 3           HSI RESEARCH SPECIALIST NANCY BRAVO

 4           FBI SPECIAL AGENT TIM ALON

 5           MOTHER AND SISTER OF MINOR VICTIM 4

 6           FATHER OF MINOR VICTIM 3

 7           ADOPTIVE MOTHER OF MINOR VICTIMS 1 AND 2

 8

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1          LOS ANGELES, CALIFORNIA; FRIDAY, SEPTEMBER 17, 2021

 2                            2:07 P.M.

 3                              - - -

 4          THE CLERK:  Calling CR 17-404, United States of

 5   America versus Moises Martinez.

 6          Counsel, please state your appearances.

 7          MR. FURSTMAN:  Good afternoon, Your Honor.

 8          Scott Furstman on behalf of Moises Martinez.

 9          THE COURT:  Mr. Furstman, we're getting some

10   feedback.  I don't know if you are in a room --

11          MR. FURSTMAN:  That's being cured.  Mr. Kasolas,

12   my co-counsel, is on with his computer, and I have asked him

13   to turn it off.

14          THE COURT:  I think his computer is still on.

15          MR. FURSTMAN:  Yes.

16      (Brief pause in the proceedings.)

17          THE CLERK:  Calling CR 17-404, United States of

18   America versus Moises Martinez.

19          Counsel, please state your appearances.

20          MS. MYERS:  Good afternoon, Your Honor.

21          Devon Myers on behalf of the United States.  With

22   me at the virtual counsel table is Lauren Kupersmith from

23   CEOS DOJ, as well as Kyle Reynolds also from CEOS DOJ.

24          Logged into the Zoom should be Homeland Security

25   Investigations Special Agent John Kuzma, HSI Research
```

1    Specialist Nancy Bravo, and FBI Special Agent Tim Alon.

2    There is also the mother of Minor Victim 4, as well as his

3    sister, the father of Minor Victim 3, and soon should be

4    joining me is the adopted mother of Minor Victim 1 and 2.

5              THE COURT:  There with you.  Correct?

6              MS. MYERS:  Some are on Zoom.  The mother -- the

7    adopted mother of Minor Victims 1 and 2 is here with me,

8    Your Honor.

9              THE COURT:  The reason why I ask is that the only

10   people that I have on screen is yourself, Mr. Reynolds,

11   Mr. Furstman, Ms. Kupersmith, and Mr. Martinez.

12             I don't have anyone else on screen.  So are -- I

13   thought you said some people are on Zoom.  So I am assuming

14   that they are on video, and at some point are they

15   requesting to be heard or not?

16             MS. MYERS:  Yes, Your Honor.

17             My understanding is that the family of Minor

18   Victim 4 would like to elocute but not turn on their video

19   screen.

20             The mother of Minor Victim 1 and 2 is here with

21   me.  So she'll come up to the lectern.  She would like to

22   read a letter from Minor Victim 1.

23             And my understanding is that the father of Minor

24   Victim 3 is on the line, and he would like to speak,

25   Your Honor.

```
 1              THE COURT:  Okay.  Let's work through it.  At the
 2   appropriate time we'll -- you'll have to give me some
 3   identifying information so that I can make sure that we
 4   promote them so that they can speak, if that makes sense.
 5              MS. MYERS:  Would initials be sufficient, Your
 6   Honor?
 7              THE COURT:  Let's try the initials, although the
 8   challenge with the Zoom is that my courtroom deputy has a
 9   list of names that -- of people that are attending, and I
10   don't have that.
11              So let's try initials.  If that doesn't work,
12   maybe we'll ask them to raise their hand virtually, and that
13   might be the signal to promote them.
14              MS. MYERS:  I can also e-mail your CRD,
15   Your Honor, and give her the names.  Would that work?
16              THE COURT:  That would be very helpful.
17              MS. MYERS:  Thank you, Your Honor.
18              THE COURT:  I guess, just for purposes of this
19   hearing -- I want to try one other thing.  If you are not
20   speaking, if you could place your phone or computer on mute.
21              This is the time for sentencing in this case.
22              And, Ms. Myers, I don't know if you have discussed
23   this at all with any of the participants that are watching.
24   To the extent you see me looking to my left, understand that
25   I have a screen closer to me where I can see your faces.  So
```

```
 1   it's not like I am looking off in the distance at something

 2   else.

 3            So I have had a chance to review the numerous

 4   pleadings that have been filed in this case as well as the

 5   letters in support of those pleadings.

 6            MR. FURSTMAN:  Your Honor, pardon me.  I don't

 7   mean to interrupt, but I should state my appearance for the

 8   record.

 9            THE COURT:  Oh, I thought you did.  My apologies.

10   Go ahead.

11            MR. FURSTMAN:  I think I was out of order but --

12   as I frequently am.  I am Scott Furstman on behalf of Moises

13   Martinez.  With me in my office is my co-counsel George

14   Kasolas.

15            THE COURT:  All right.  Thank you.

16            Mr. Martinez, I just want to confirm with you that

17   you are okay with us proceeding via videoconferencing here

18   today.

19            DEFENDANT MARTINEZ:  Yes, Your Honor.

20            THE COURT:  All right.  I have had a chance to

21   review the pleadings that were filed in this case, the

22   presentence report, the recommendation letter, the

23   government's position, defendant's position paper, as well

24   as the addendum and all the letters that were submitted in

25   support of the respective position papers.
```

```
 1              Is there anything else that has been submitted or
 2    filed that I did not mention, Ms. Myers?
 3              MS. MYERS:  No, Your Honor.
 4              THE COURT:  Mr. Furstman?
 5              MR. FURSTMAN:  Not to my knowledge.
 6              THE COURT:  Okay.
 7              MR. FURSTMAN:  I'm sorry, Your Honor.
 8              There is a waiver of personal presence, a written
 9    and executed waiver that was filed for today's appearance.
10              THE COURT:  All right.  Great.  Thank you.
11              Mr. Furstman, have you had enough time to read the
12    presentence report and review it with your client?
13              MR. FURSTMAN:  Yes, Your Honor.
14              THE COURT:  Did you explain to him the contents of
15    the report?
16              MR. FURSTMAN:  I certainly did.
17              THE COURT:  Do you have any concerns about his
18    ability to understand the report?
19              MR. FURSTMAN:  No.
20              THE COURT:  Mr. Martinez, did you get the
21    presentence report and go over it with your lawyer?
22              THE DEFENDANT:  Yes and yes, Your Honor.
23              THE COURT:  Do you need any more time to read it,
24    sir?
25              THE DEFENDANT:  No, Your Honor.
```

```
1              THE COURT:  Did you understand it, sir?

2              THE DEFENDANT:  Yes, sir.

3              THE COURT:  Mr. Furstman, do you want to contest

4    or change anything in the presentence report other than

5    what's been submitted in writing?

6              MR. FURSTMAN:  No, Your Honor.

7              THE COURT:  At this time, sir, the floor is yours.

8    You may state your position with respect to the sentence in

9    this case.

10             MR. FURSTMAN:  Thank you, Your Honor.

11             As the Court has noted, we've submitted our

12   position paper with -- replete with exhibits and letters and

13   documents in support of Mr. Martinez, and the matter is now

14   here for sentencing.

15             There are a number of components about this case

16   as there are in basically any case in the district court.

17             One is the facts of the case, the underlying

18   conduct giving rise to the prosecution and in the ultimate

19   plea.

20             And we would concede at the outset, as

21   Mr. Martinez has indicated in his submissions to the Court

22   and through probation, that the facts of this case are

23   difficult.  They are of a serious nature.  And Mr. Martinez

24   has accepted full responsibility for his conduct and for the

25   actions that have brought him before the Court.
```

```
 1            But in moving from the facts of the case as has
 2   Ms. Myers has -- has articulated in her pleadings and moving
 3   papers, the facts appear to be accurate.
 4            The conduct appears to be troubling, but
 5   Mr. Martinez has taken steps to recognize through contrition
 6   and his admissions at a very early stage of these
 7   proceedings his desire to put this matter behind himself and
 8   the young victims of the underlying activity and conduct.
 9            THE COURT:  Mr. Furstman, if I could interrupt.
10            You say he's dealt with some steps to address
11   this.  What would you describe those steps to be?
12            MR. FURSTMAN:  What I would describe the steps to
13   be in the first instance is that Mr. Martinez accepted full
14   responsibility and entered a plea almost five years ago at a
15   very early stage of these proceedings.  He did that to show
16   contrition, to commit to assist the government.
17            He has entered into or entered into what he
18   anticipated to be a -- and what was a cooperation agreement
19   with the government.
20            He has put his life literally on hold and at great
21   risk while he has been moved from one facility to the next.
22   But he committed to assist the government, and that also
23   required a substantial time aspect of several years while
24   the government resolved or attempted to resolve the cases of
25   the co-defendants Brinson and Harrell.  Mr. Martinez was
```

 1   ready, willing, and able to testify with regard to

 2   Mr. Harrell and Mr. Brinson.

 3          What I can indicate to the Court, as an officer of

 4   the Court, for many, many years that Mr. Martinez, as I see

 5   him here today and as I have talked to him as late as

 6   yesterday, is not the same young man that I spoke to almost

 7   five years ago.

 8          He has shown introspection and insight and a

 9   serious concern for his background and activities that he

10   was involved in.  And he has done everything possible within

11   his abilities to further his understanding and to try to

12   posture himself where, hopefully, he will have an

13   opportunity to spend some time outside of a custodial status

14   and pursue further education and as he has already been

15   doing in the correctional institutions he's been bounced

16   from one to another through no fault of his.

17          So he has become -- when he made the decision to

18   cooperate, he became, for all intents and purposes,

19   government property, and he did everything within his power

20   to cooperate, to provide complete, truthful and candid

21   answers and to be available.  And I will return to that

22   component, the 5K1 aspect of it, in a moment, but I wanted

23   to be responsive to the Court in terms of what he has done.

24          Unfortunately, Mr. Martinez has very limited

25   recourse and resources to mental health treatment at the

```
 1    San Luis Regional Detention Center located near Yuma,
 2    Arizona; but he has taken it upon himself to learn, to
 3    understand, and to, hopefully, posture himself where he
 4    could have another opportunity at a productive life.
 5           The facts of the case, as I have said, are
 6    difficult, and those can never be taken back.  Mr. Martinez
 7    has expressed concern for the minor victims and has shown
 8    contrition and an awareness of the gravity of the conduct
 9    that has brought him before the Court at this point.
10           THE COURT:  Thank you.  Please continue.
11           MR. FURSTMAN:  Thank you.  If I might.
12           So we have that aspect of the case, and then we
13    have the pure functional aspect of the Court formulating a
14    sentence that is appropriate for Mr. Martinez.
15           The guideline calculation as to is -- prepared by
16    Mr. Manahan is correct.  We -- Mr. Martinez entered into a
17    Plea Agreement that basically was equivalent to, and he did,
18    so to speak, plead to the sheet.  He has accepted
19    responsibility for all of his conduct.
20           In saying that, however, there still is a
21    tremendous free fall in terms of his good faith and his
22    cooperation and fulfillment of that aspect with the
23    government and where he is going to land in terms of the
24    ultimate sentence.
25           There is a 20- and a 15-year mandatory minimum in
```

1    this case.  The government has brought the 5K1 which allows

2    the Court in its discretion to sentence anywhere within the

3    range and below that range for that matter.

4         But the guidelines are also one of those rare

5    circumstances where the calculation of all the relevant

6    conduct in the grouping of the offenses cause a calculated

7    offense level of substantially over 43, Level 43.  But the

8    bottom line is the Level 43 is the top of the guidelines,

9    and it maxes out at 43.

10        One of the things that concerns me -- and I'm not

11   casting aspersions but I find it concerning -- is that the

12   government seems to pair their 5K1 recommendation with the

13   fact that Mr. Martinez is, quote, getting a break, end

14   quote, because he should be at a Level 51 and he's starting

15   at a Level 43.  That has nothing to do with the 5K1

16   component of this case.

17        The Sentencing Commission saw fit to cap the

18   guidelines at a 43, recognizing there are rare instances

19   where the guideline calculation will in the first instance

20   be higher.  But that's a function of the guidelines in the

21   USSG, and that rendered a guideline calculation that

22   commences and starts at 43.

23        So Mr. Martinez didn't reap a benefit by any

24   stretch of imagination in terms of the government's

25   recommendation to get him from a 51 to a 43.  That's a

```
 1    function of the guidelines.

 2              THE COURT:  Is it really a function of the

 3    guidelines if you acknowledge that his guideline almost at a

 4    minimum is 43 because the grouping, et cetera, exceeds that?

 5    At 43, the guideline range is life; right?

 6              MR. FURSTMAN:  That's correct.  It's life across

 7    the board at a 43.

 8              THE COURT:  And so the government could --

 9    couldn't the government with a straight face argue there

10    is -- the alternative -- we could have just said life, but

11    we're not, and that's why they recommended what they are

12    recommending?

13              MR. FURSTMAN:  Your Honor, it's like apples and

14    oranges.  To start the recommendation based upon the fact

15    that he was topped out at a 43 as opposed to a 51 seems

16    somewhat disingenuous.

17              I can understand Mr. Martinez gets the break or

18    the proverbial magic key to get below the potential life

19    sentence, which is advisory only to Your Honor but what is,

20    obviously, not the mandatory minimums that the Court can now

21    work around based upon the 5K1.

22              But I submit that Mr. Martinez should start and

23    get the benefit of the bargain and should start at a 43

24    because that's what the guidelines dictate.

25              Now, what is of concern to me -- and this will
```

```
 1   take a moment or two -- but I wanted to thank the government
 2   for their candor in terms of their position paper and in a
 3   couple of areas.
 4          One of them begins at page 21 of the government's
 5   position paper.  And I read from their position paper first.
 6   And that indicates the defendant met with the government
 7   multiple times and although minimized some of his conduct
 8   the government believes the defendant was mostly truthful.
 9   Defendant was willing to testify against Brinson and
10   Harrell.
11          I will try to short circuit some of this.  But
12   Mr. Martinez has a tremendous amount of time on the line.
13          He provided a few other details including abuse of
14   each other's victims.  He provided the government with
15   letters that Brinson wrote to him in prison, which the
16   government used in its opposition to one of Brinson's
17   motions to suppress.
18          The defendant also provided some details that
19   helped expedite identification of another producer on the
20   dark web, corroborating information the government had from
21   chat messages.  The chat messages revealed this target, and
22   the defendant exchanged their homemade sexual abuse videos
23   as well as made specific requests for videos of particular
24   sexual acts with victims.
25          It goes on to say that the defendant provided
```

1   additional information, he provided information that

2   resulted in furtherance of a prosecution, and as I

3   understand Ohio and -- was also instrumental in terms of the

4   Court imposing the sentence of 200 years in that Ohio case.

5            Should I pause for a moment?

6            THE COURT:  Yes, please.

7        (Brief pause in the proceedings.)

8            THE COURT:  Ms. Myers, if you can hear us, I think

9   you need to unmute your end.

10           Ms. Myers, can you hear us?

11           MS. MYERS:  Yes, but I can't unmute.

12           THE COURT:  We can hear you now.

13           MS. MYERS:  I am through the feed because I am in

14   the room with some other people, and so I don't have a lot

15   of control over my ability to mute and unmute myself.  Sorry

16   about that.

17           THE COURT:  No need to apologize.  We're just

18   trying to work through it.

19           Mr. Furstman, please continue.

20           MR. FURSTMAN:  Yes.  And I am almost done with

21   this portion.  But there was the assistance that brought to

22   fruition a case in Ohio that resulted in a 200-year period

23   of incarceration.

24           I think probably one of the most critical

25   components of Mr. Martinez's complete and unequivocal

1    cooperation is stated at page 22, line 10.

2                     (Reading:)  Defendant also provided

3              information about one of Harrell's victims who

4              law enforcement had seen in Harrell's images

5              but had not yet identified, Minor Victim 21.

6              Defendant knew the child's name and offered a

7              description which investigators were able to

8              link to another known victim and ultimately

9              identify the child.  From there the government

10             identified two other children, child victims,

11             since Harrell had abused all three on an

12             elementary school trip that he chaperoned

13             shortly before his arrest.

14             The government continues that, in sum, the

15    defendant provided the government with substantial

16    assistance.

17             If you took -- I would posit and presume that, if

18    you took any one of those, at least, minimum of five areas

19    of substantial assistance and cooperation on Mr. Martinez's

20    behalf, any one of those in my experience, which is

21    certainly different than the United States Attorney's, as

22    Your Honor had experience, and as the prosecution has

23    experience in, but I would hasten to say that any one of

24    those substantial areas of cooperation would most likely

25    standing alone warrant a minimum of two, but more likely I

1    would submit a four level downward departure.  The

2    government is recommending one level.

3              Mr. Martinez entered into an agreement.  He

4    entered into a contract.  The government I suppose fulfilled

5    their obligation by bringing the 5K1 motion, but I think, in

6    all contracts that are entered into and plea negotiations,

7    there is the idea and the concept of good faith and fair

8    dealing.

9              And to recommend one level, I think is, with all

10   due respect to government counsel, and I -- who we have had

11   a very cordial and good relationship with throughout the

12   course of these proceedings, but I think it is disingenuous.

13             And I think Mr. Martinez is entitled to the

14   benefit of his bargain, which would be a balance that would

15   bring more into perspective his cooperation and would send a

16   message that there is a benefit to cooperation as opposed

17   to, if you cooperate, you get a one-level reduction.  And

18   that is a tremendous concern to me.

19             There are also components, collateral components,

20   and consequences of Mr. Martinez being bounced from

21   correctional facility to correctional facility while he

22   waited for the government's case to come to fruition

23   vis-à-vis Brinson and Harrell, and he contracted COVID in

24   the Orange County Jail.  He was moved from there to Arizona

25   where he has been in Yuma.  His life has been on hold.

```
 1          The time that Mr. Martinez will do is truly going
 2   to be hard time.  These are the type of charges and, given
 3   the cooperation on top of that, that are going to leave
 4   Mr. Martinez with constantly looking over his shoulder and
 5   watching his back.
 6          So it is very difficult time of which he will do
 7   85 percent.  And the government raises a theoretical
 8   argument in terms of what is a life sentence.  Mr. Martinez
 9   is 30 years old.  The government is recommending 55 years.
10   That's a tremendous amount of time, obviously.
11          Is there a life when you are doing hard time after
12   55 years?  I think an actuarial will show perhaps, if you
13   are not out in the streets and in the comfort of your own
14   home.  When you are living through the daily concern and the
15   abuse and the conditions that are present in the
16   correctional institutions, I would think Mr. Martinez would
17   be getting the functional equivalent of a life if not a
18   death sentence at 55 years.
19          THE COURT:  Mr. Furstman, I don't think we have
20   had many sentencing hearings, and I do this, and I will do
21   it with the government.  I interrupt from time to time.  I
22   don't mean to be rude.  I just have some questions.
23          MR. FURSTMAN:  Please do.
24          THE COURT:  If I understand your argument, you say
25   minimum of two to four levels -- anywhere from two to four
```

```
1    levels.  That gets him at best in the 324 to 405.

2              Your recommendation I think is ten years, which

3    that would result in another eight levels down.  So a

4    total --

5              MR. FURSTMAN:  Well, I can --

6              THE COURT:  Would be a reduction of basically 11

7    levels or so?

8              MR. FURSTMAN:  Yes.  And I can explain one way of

9    getting there.

10             If you look at everything I have just elaborated

11   from -- and that's from reading directly from the

12   government's position paper.  This is not things that I have

13   made up, but it is all correct and thorough and accurate.

14             But if you just take the areas of cooperation

15   referenced in the position paper, you have the letters that

16   the government relied upon in defeating in part --

17             THE COURT:  I'm sorry, Mr. Furstman.

18             So you're saying that he should get at least two

19   levels for each individual instance of -- what you would

20   characterize as categories of cooperation?

21             MR. FURSTMAN:  Instances of cooperation because

22   it's not just categories.  He fulfilled the category.

23             He gave the letters.  He gave the identification

24   of three young victims that were previously unknown.

25             THE COURT:  You are saying in the totality, then,
```

```
 1   that would justify a 10- or 11-level departure combined with

 2   his personal circumstances.

 3              MR. FURSTMAN:  Correct, Your Honor.

 4              THE COURT:  Got it.

 5              MR. FURSTMAN:  Correct.

 6              And then -- and I am also saying that, I believe

 7   that, if the Court does not accept that argument, that I

 8   think just looking at the idea of a one-level

 9   recommendation -- and again the Court doesn't involve itself

10   or make the recommendation, but I think that there is a

11   judicial opportunity for the Court to send a message that,

12   when you cooperate, you get the benefit of your bargain.

13              I can't say that I would be making the same

14   argument if the government came up with a substantial

15   downward departure under 5K1.1 recommendation.  But one

16   level and predicated in part upon the fact that Mr. Martinez

17   is getting a, quote, break, end quote, going from a 51 to a

18   43, a 51 to 43 is, as I have already argued, is like apples

19   and oranges.  That's not tied to the 5K1.1.

20              THE COURT:  But I am talking about 43 down to, in

21   essence, 32, which is, in essence, what you are asking the

22   Court to do.

23              MR. FURSTMAN:  That's correct.

24              And I think -- and I provided the Court with a

25   method and a way that's documented without even taking into
```

1   account the collateral consequences of Mr. Martinez's

2   cooperation.

3          THE COURT:  Mr. Furstman, do you acknowledge or --

4   maybe "concede" may be too strong a word, but you are asking

5   the Court to take a huge risk in what you are recommending,

6   a risk that someone who has committed the offenses that he

7   has repeatedly is going to change in ten years when there is

8   no evidence to suggest that at all.

9          And in fairness to him, there is no treatment

10  that's available, at least right now -- maybe there will be

11  during his custody -- but there is nothing really to give

12  this Court any thought that things would be different if he

13  gets out at age -- based on your recommendation, 40

14  something.

15         MR. FURSTMAN:  Your Honor, I would concede that

16  there is no crystal ball.

17         The practice of law -- and you wear the proverbial

18  black robe and have to make the judgment call.  And no bench

19  officer wants to be in the position of making a huge

20  judgment call that would come back and cause consequences in

21  the future.

22         But that's part of being in the judiciary.  We

23  don't practice with magic eight balls and say what should I

24  do and shake the ball and have the answer.  Calls are tough

25  to make.  I would not want to be on the end of a repeat

```
 1    incident either.  That's a leap of faith.  That is,

 2    Your Honor, is a well-taken question.

 3              THE COURT:  And I understand you are in a somewhat

 4    difficult position.  But what if anything do you think this

 5    Court should -- gives the Court some sense that things might

 6    be different?

 7              And if you can't, I mean, I respect that.  I think

 8    we need to just put all our cards on the table here.  What

 9    you are asking the Court to do is a huge leap of faith to

10    assume that someone with this kind of conduct with close

11    family members will not reoffend.

12              MR. FURSTMAN:  Your Honor, I appreciate the

13    Court's question, and I know that this is not Dr. Furstman,

14    psychiatrist or therapist.  This is just a

15    down-in-the-trenches attorney that has been doing this for

16    many years.  And I have seen the growth and progression of

17    certain defendants, other defendants.  It's not there.

18              And I know that can't give the Court much

19    assurance, but the changes I have seen in Mr. Martinez, the

20    growth I have seen in Mr. Martinez, and the overall thought

21    that Mr. Martinez should have -- if nothing more, based

22    upon, one, if we can put it -- recidivism aside but the

23    extent of cooperation he has done and the commitment that he

24    has made, that I think he deserves, I think he has earned a

25    break, a break in life to get out and not spend the rest of
```

1   his life and die in prison.

2          He caused -- he did the acts, and that's why I was

3   candid with the Court when I said the facts are the facts.

4   I didn't say exactly that, but they are what they are.  They

5   are ugly.  They are not good facts.

6          But there is a component where is this case -- and

7   not looking necessarily only at the facts but looking at the

8   individual, is Mr. Martinez not worthy of an opportunity of

9   a chance?

10          Fifty-five years, while it's better than life, it

11   is the equivalent of life when he is 30 years old.

12          And as I said -- I won't repeat it other than one

13   last time -- he will be doing hard time.  He will be,

14   because of his sentence, in a probably a high-level security

15   facility, and he will always be looking behind his back not

16   only because of the nature of the offenses committed but

17   because of his cooperation with the government.

18          He is living in the cross hairs.  And, Your Honor,

19   when it all comes down to it, Your Honor is right.  We're

20   putting our cards on the table.  We're not playing it close

21   to the vest.

22          We're trying to ask would the Court consider

23   imposing a sentence on Mr. Martinez that will give this

24   young man a chance and an opportunity.

25          I cannot tell you that he will not reoffend.  I

```
 1    cannot tell you that the sun is going to come up tomorrow.

 2    I anticipate that it will, and I anticipate I will also

 3    still be breathing tomorrow.  So those are all be good

 4    things.  Maybe in some people's mind.  In mine they are.

 5            But there is a way we can get to a substantial

 6    reduction, taking either 3553 factors, the 5K1 that frees

 7    the Court's hands to go even below mandatory minimums, and

 8    just this Court's ability to impose a sentence that the

 9    Court deems appropriate.

10            And that's my final component or area of the

11    guidelines is that there is the function of sentencing which

12    is I hope in this case not -- and this is not meant with any

13    disparagement to the government or to Your Honor, but that

14    the sentencing function take place with consideration of is

15    there a basis to give this young man an opportunity to see

16    freedom again or not.

17            And I know the Court is going to hear from victims

18    or on behalf of victims.  And, like I said, we want all the

19    cards on the table.  And my heart goes out to them, but, by

20    Mr. Martinez's activities and actions from very, very early

21    on in this case and his commitment to cooperate, he's done

22    far beyond the normal level of cooperation in these types of

23    cases.

24            And I would hope that the Court would allow me a

25    few minutes to respond to any reply.  I know I have gotten a
```

```
 1    little long-winded, but this case is troubling in many, many

 2    ways, and it is a huge responsibility.  And thank you for --

 3    and government counsel, thank you for my opportunity to

 4    address the Court.

 5             THE COURT:  Thank you, Counsel.  Appreciate it.

 6             Mr. Martinez, is there anything that you wish to

 7    say before I sentence you?

 8             THE DEFENDANT:  Yes, Your Honor.  It's been more

 9    than four years since the start of this case, Your Honor.

10    In that time I have grown, I have matured, I have

11    self-discovered myself.  I know I am not the same man that

12    got arrested that day.

13             I understand, acknowledge that I did a lot of

14    damage and pain to those I hurt.  I regret it, and I am

15    ashamed.  Should not have happened.  I have no excuses, no

16    reason, nothing.

17             I have learned from these mistakes.  You can be

18    certain I won't do it again.  I have not wasted my time in

19    here self-loathing doing nothing or planning to do any more

20    crimes like this or any crime at all or to do evil.

21             I have grown spiritually.  I have grown to be a

22    better person, grown in knowledge, in wisdom.

23             I registered myself with getting a degree in

24    college, and I hope that my degree and the work that I will

25    do with it will pay back society the great debt that I owe
```

```
 1   even if it's just a little.  I understand that nothing I do
 2   will be able to fix the past, but I am willing to work very,
 3   very hard for the future, pay back what I owe and to prove
 4   to you, Your Honor, to my family and to society that I am
 5   worth to be given a second chance to do good and to be a
 6   part of society, be good to society and not to do evil, to
 7   help others, appreciate others.  And I am thankful for your
 8   time and attention, Your Honor.
 9           I request that you be just, Your Honor, please,
10   and to please be extremely lenient with me, please.
11           I'm not asking to you to set me free -- I
12   understand that what I have done warrants imprisonment and
13   punishment.
14           What I am asking for you, Your Honor, is to please
15   give me a second chance and not -- give me a second chance,
16   please, to prove to you that I was worth that to prove to
17   you a great leap of faith that I am never going to do this
18   again.
19           I'm around people in here who lied to the Court,
20   lied to their lawyers, the prosecutors, their families, and
21   to themselves.  They plan to do these crimes again every day
22   but not me.
23           I -- from facility to facility I have taken my
24   time to, like I said, read, study, to come to acceptance.
25                   And I know I don't have the, like, evidence to
```

```
 1   show like in large quantities, but four years ago I made a

 2   promise.  I know this may sound ridiculous, but it's the

 3   only evidence that I have.

 4        I made a promise I would never eat meat again as

 5   long as I lived.  And to this day I have kept that promise

 6   because, if I can keep my word with that for so long, that I

 7   can keep this word I give to you, Your Honor, that I am

 8   never going to do this again, and I am ashamed and

 9   regretful.

10        And you have my word that you can give me a second

11   chance to not spend years and years and decades in prison

12   that I will make you proud that you have given me the second

13   chance to do great things and pay back society what I owe.

14        I know it's not much, but I ask that you take in

15   everything that I have done to help while my time in here.

16   Thank you and God bless.

17        THE COURT:  All right, sir.

18        All right.  From the government, Ms. Myers.

19        Do you want to contest or change anything in the

20   presentence report other than what's been submitted in

21   writing?

22        MS. MYERS:  No, Your Honor.

23        THE COURT:  All right.  So the floor is yours with

24   respect to what you want to present on behalf of the

25   government.
```

```
 1              MS. MYERS:  Yes, Your Honor.

 2              Is it -- may I go ahead and have the victims

 3    elocute at this point in time, Your Honor?

 4              THE COURT:  That's fine if you wish -- we received

 5    your e-mail.  So that was helpful.  So which person do you

 6    want to have elocute first?

 7              MS. MYERS:  Let's start with the father of Minor

 8    Victim 3, Your Honor.

 9              THE COURT:  Hold on a second.  I am worried that

10    that person may not have -- we weren't able to see him on

11    Zoom earlier, but let's see if that's changed.

12              MS. MYERS:  He may also be on the phone,

13    Your Honor, I think.

14              THE COURT:  Okay.  I don't want to give out any

15    personal information.  I see a phone number.

16              MS. MYERS:  If it is a 559 area code, I believe

17    that's him.

18              THE COURT:  Let's give that a try.  Sir, you may

19    have to do star --

20              MINOR VICTIM 3 FATHER:  Hello?

21              THE COURT:  Sir, can you hear us all right?

22              MINOR VICTIM 3 FATHER:  Yes, I can.  Let me pull

23    over right quick, Your Honor.  Give me one second.

24              THE COURT:  All right.  Thank you.

25              MINOR VICTIM 3 FATHER:  I drive a big truck, and I
```

```
 1    don't want to hurt nobody.
 2              THE COURT:  Okay.
 3              Can you hear us, sir?
 4              MINOR VICTIM 3 FATHER:  Yes, I can.
 5              THE COURT:  Okay.  Sir, my name is André Birotte.
 6    I am the judge who has been presiding over this case.  The
 7    government lawyer has indicated that you wanted to be heard.
 8    So I am going to give you the opportunity to do so at this
 9    time.
10              MINOR VICTIM 3 FATHER:  Okay.  Can I start?
11              THE COURT:  Go ahead.
12              MINOR VICTIM 3 FATHER:  Okay.  I overheard
13    everything that the defense attorney has to say.  He is
14    saying he has a job to do.
15              THE COURT:  Sir, I am sorry.  It's very muffled.
16              MINOR VICTIM 3 FATHER:  Okay.  Hold on.
17              Let me say something.  Is it muffled now?
18              THE COURT:  Much better.
19              MINOR VICTIM 3 FATHER:  Okay.  I said I overheard
20    what the defense attorney has to say, and I understand that,
21    you know, everybody has a job to do.
22              I also understand that the defendant helped the
23    prosecutor and -- with other cases and that, you know, he
24    was hoping and praying that, you know, the help that he did
25    would kind of help him in the long run.  But let me explain
```

1   something to him.

2            If you wouldn't have got caught, you wouldn't have

3   told nobody nothing.  You would have kept doing what you

4   kept doing, you would have kept hurting, you would have kept

5   taking from kids their innocence because they didn't ask for

6   this.  They trusted in you all, and you all took that trust

7   and you all betrayed it.

8            You all didn't speak about what you all were

9   causing.  You all didn't speak about the pain, the

10  suffering.  You didn't think about none of that.

11           All you thought about was your all selfishness and

12  what you all were getting out of it, how much fun you all

13  were having.

14           You didn't think about the parents that you were

15  hurting.  You didn't think about the children that you were

16  hurting.  You just thought about yourself.

17           So do I care that you helped the prosecutor and

18  was able to, you know, bring other people to justice?  I

19  mean, yeah.  You know, I pat you on your back for that.

20           But do I care that you are asking to be able to go

21  home one day and to be able to lay in a bed and to be able

22  to, I guess, open your own refrigerator?  No, I don't care.

23           Do I care if you rot in prison for the rest of

24  your life?  I pray and hope you do.  Because at the end of

25  the day my child has to live with the things that you all

1    did with them for the rest of their lives.

2         They don't get an opportunity to say, "We're going

3    to start over."  They got to live with that until they leave

4    this earth.

5         So the same way they got to live with that, you

6    shall have to live with the fact of knowing that, "Hey, I

7    made this bed, I got to lay in it.  And if I got to lay in

8    the cell for the rest of my life, so be it."

9         Be a man and swallow that pill because at the end

10   of the day, you made that bed for yourself.

11        And I hope I speak for every parent that you all

12   did something to their children.  I hope I could speak for

13   all of us and say that a life sentence ain't even good

14   enough because, if I had it my way, you would be back when

15   they were able to put you in front of a firing squad and

16   they would just shoot you.  Because there is nothing you can

17   say or tell any one of us to make us think that you are

18   going to change.  You are never going to change.  You are

19   sick, and you are right where you need to be.

20        I have nothing else to say.

21        THE COURT:  All right.  Thank you, sir.  I

22   appreciate you taking the time, and I am sorry you are

23   having to go through this.  I mean that.  But thank you.

24        Ms. Myers, who is next?

25        MS. MYERS:  Yes, Your Honor.  If we could hear

```
 1    from Minor Victim 4's mother and then Minor Victim 4's
 2    sister, please.  They should be in the same location.
 3              THE COURT:  Minor Victim 4 mother.
 4              Hold on, just bear with us, let's see if we can
 5    get this.
 6              Ms. Myers, help me.  This is by Zoom as well.
 7    Correct -- or by Zoom I should say.
 8              MS. MYERS:  Yes, Your Honor.  My understanding is
 9    that they don't want to publish their video, but they should
10    be on audio.
11              THE COURT:  Audio.  Okay.  Let me just
12    double-check.
13              Can you hear us?
14              MINOR VICTIM 4 MOTHER:  Yeah, I can hear you guys.
15              THE COURT:  Ma'am, I don't know if you have been
16    listening the whole time.  My name is André Birotte.  I am
17    the judge who has been presiding over this case.
18              The government lawyer, Ms. Myers, has indicated
19    that you wanted to say something to the Court.  So the floor
20    is yours.  Please go ahead.
21              MINOR VICTIM 4 MOTHER:  I -- I will do my best
22    and --
23              THE COURT:  I'm sorry.  There is a huge echo.
24              MINOR VICTIM 4 MOTHER:  I'm not sure how to --
25              THE COURT:  Hold on.  I may try to mute some other
```

```
 1   connections, see if that works.
 2            Go ahead, ma'am.  Try again.
 3            MINOR VICTIM 4 MOTHER:  Is that better?
 4            THE COURT:  It's a little better.  Go ahead.
 5            MINOR VICTIM 4 MOTHER:  Okay.  So --
 6            THE COURT:  We're going to have to stop you again.
 7            I think one of the issues may be is that --
 8   because I think two people are speaking from the same room.
 9   It's creating this echo that's making it difficult.  Or
10   having two devices in the same room is creating this echo.
11            The only reason why I am bringing this up is it's
12   hard for me to hear, and I know it's hard for our
13   court reporter to hear as well.
14            If you are in a room with two devices, can you
15   mute one of the devices and use the other one to speak.
16            MINOR VICTIM 4 MOTHER:  They only have one device
17   on.
18            THE COURT:  No computer in your -- where you are
19   talking from?
20            MINOR VICTIM 4 MOTHER:  No, just the computer
21   that --
22            THE COURT:  Let's try again.  I'm sorry, ma'am,
23   just try to speak very slowly, if you could, because it's
24   really hard.  There is an echo that makes it hard for me to
25   understand what you are saying.
```

```
 1                 MINOR VICTIM 4 MOTHER:  Not really sure how to
 2   make it not echo.
 3                 THE COURT:  That's fine.  Go ahead.
 4                 MINOR VICTIM 4 MOTHER:  Okay.  So I felt what the
 5   dad said hit everything on head.
 6                 I want to tell you, Moises, you are sitting here
 7   pleading for your life, but you took my kids' life from
 8   them.  I feel that you should do the rest of your life in
 9   prison, you know.  My kids have had so much mental health
10   issues from what you did to them.
11                 You used my kids' love for the family as a crutch
12   to do what you wanted to them, and that's shame on you.
13                 And I don't care if you spend the rest of your
14   life in prison.  I don't want you back on the streets.  You
15   don't deserve that.  I don't care if you helped other kids.
16   You do not deserve to be back on the streets.
17                 Yourself and your entire family have done so much
18   damage to my children, so much damage.  And I just hope that
19   you spend the rest of your life in prison.
20                 I can't even finish this.  So --
21                 THE COURT:  Take your time, ma'am, take your time.
22   It's okay.
23                 MINOR VICTIM 4 MOTHER:  I am done.  My daughter
24   can talk now.
25                 THE COURT:  All right.  I am sorry, Ms. Myers.
```

```
 1   Again, because I am very sensitive about names, I ask you to
 2   identify who is speaking next.
 3          MS. MYERS:  It should be the sister of
 4   Minor Victim 4, Your Honor, who is in the same room with the
 5   mother of Minor Victim 4.
 6          THE COURT:  Okay.  Great.
 7          Ma'am, you can hear us?
 8          MINOR VICTIM 4 SISTER:  Yes.
 9          THE COURT:  All right.  I don't know if you heard
10   earlier, but my name is André Birotte.  I am the judge
11   that's assigned to this case.  And the government lawyer
12   indicates that you want to say something.
13          So I want to give you the opportunity to speak.
14   Okay?  Take your time.  I have given everyone adequate time.
15   Mr. Martinez, his lawyer, everyone deserves an opportunity
16   to be heard.  So go ahead, take your time.
17          MINOR VICTIM 4 SISTER:  What you did to my little
18   brother and [Minor Victim 1] and these other kids, I don't
19   think you deserve to have a life outside.  Asking for less
20   than what he deserves is I think dumb because, as he says
21   that he, like, watching his back and stuff, and you would
22   still feel the same way if he got out.
23          I don't think they would be able to move on.  I
24   don't think that they have been able to move on when he is
25   in there because the trauma that he put them through.
```

```
 1              I don't think that he cares about the kids or
 2    anybody else but himself.  Please don't let him out.  If he
 3    gets out, I think that would break all our hearts.  I think
 4    that would make everybody scared for their lives.
 5              The victims that he did, I don't think -- please
 6    don't let him out.  I hope he rots in there.  He doesn't
 7    deserve a life outside of jail.  Karma will get him.
 8              That's it.
 9              THE COURT:  All right.  Thank you, young ma'am.  I
10    appreciate you being brave enough to speak.  Thank you.
11              Ms. Myers.
12              MS. MYERS:  Your Honor, a quick request.
13              I believe that Minor Victim 4 sister inadvertently
14    mentioned Minor Victim 1's name.  If we could have the
15    court reporter strike it from the record and reference
16    Minor Victim 1 instead.  And if she needs me to e-mail her
17    separately, I can do that at the conclusion of the hearing.
18              THE COURT:  I'll discuss that with the court
19    reporter or maybe sealing that portion of it.
20              MS. MYERS:  Thank you, Your Honor.
21              Next is the adoptive mother of Minor Victim 1 and
22    Minor Victim 2, she's here with me, Your Honor.
23              THE COURT:  Again, no disrespect to any one.  If
24    you are not speaking, just please place your phones on mute
25    just to limit the feedback.  I know there are a lot of
```

1    people on this call.

2              MINOR VICTIM 1 ADOPTIVE MOTHER:  So I actually

3    have two statements to read.  I wrote my own.  Before I read

4    Minor Victim 1's statement, I am going to read mine because

5    my son requested to go last.

6              THE COURT:  Okay.  Speak up a little bit if you

7    don't mind so I can make sure that I hear you.

8              MINOR VICTIM 1 ADOPTIVE MOTHER:  Okay.  Is this

9    volume better?  Sorry.  I don't --

10             THE COURT:  I know.  Just bring the microphone

11   closer.  That's all.  The mask and just -- we're trying to

12   adjust here.

13             MINOR VICTIM 1 ADOPTIVE MOTHER:  Is this better?

14             THE COURT:  Much better.  Thank you.

15             MINOR VICTIM 1 ADOPTIVE MOTHER:  Okay.  I don't

16   understand the point system, Your Honor, and I -- I'm not

17   going to stand up here and try to understand it.

18             Personally, I agree with my brother's lawyer that

19   55 years is a life sentence.  Part of my panic attack was

20   the idea of my brother dying, and I know that every one here

21   loathes my brother for what he did, and I get it.  I

22   understand that my kids were Minor Victim 1 and Minor

23   Victim 2.  I get it.  I do.

24             I don't like what he did.  I hate the choices that

25   he made, but I also grew up with him, and I love my brother

```
 1    very deeply.  And I do believe people can change.  I believe
 2    in second chances.
 3              I have not spoken to my brother.  I made a
 4    decision to choose the kids first.  I have cut all ties with
 5    him, and I don't regret it.  I don't.
 6              I love my kids, and I put them first, and I will
 7    always put them first.
 8              And I know that, at family dinners, if by some
 9    grace of God some miracle he does get out, I know that I
10    will not be seeing him at Thanksgiving or Christmas dinners,
11    and that our families are split in two.
12              I no longer see Minor Victim 4 or his sister.  And
13    I love them deeply, and I miss them, and my own kids miss
14    their cousins.
15              And I no longer see them at Thanksgiving nor
16    holiday dinners.  But I, again, I have lost a brother.  It
17    was a hit-and-run, and he died in September of 2016.  I
18    buried one brother, I don't want to bury another.
19              But I also disagree with my brother's lawyer in
20    saying that ten years is enough to rehabilitate my brother
21    for his actions.  It's a slap on the wrist.  It's a timeout.
22              And I do love you, Brother, I do.  I will always
23    love you.  And if, as God says, you have changed, as our
24    parents have said you have changed and that you feel remorse
25    for the things that you have done, then as our father had
```

```
 1   always said, show me.

 2               You will never see my kids ever, and I know you

 3   know that, that you will never see me in this lifetime.

 4               And you want a second chance.  You are begging for

 5   a second chance.  Just show me.  Show me that you have

 6   changed.

 7               You can't honestly ask the Court for a second

 8   chance and ask them to only give you ten years for hurting

 9   these children.  And I applaud you for helping the court

10   take down the rest of these people.

11               I don't know how many people you have taken down.

12   I don't know how high the pyramid goes.  I don't, but I do

13   applaud you.

14               And I will miss you.  And in the next life I will,

15   hopefully, welcome you with open arms so we can sit and have

16   time to catch up and banter and go over all of our movie

17   quotes as we used to do when growing up.

18               But as I am teaching my kids, there are

19   consequences to bad choices.  So you have to have

20   consequences.  And unfortunately yours are going to be

21   longer than you want them to be.

22               Just for the record, these are my words, and

23   nobody is allowed to speak for me except for me.

24               I will now read my son, Minor Victim 1's,

25   statement, Your Honor.
```

```
 1            THE COURT:  All right.  Please go ahead.

 2            MINOR VICTIM 1 ADOPTIVE MOTHER:  To Your Honorable

 3   Judge.  I asked my aunt to stand before the Court and speak

 4   on my behalf not because I was afraid to face Mr. Martinez,

 5   simply I did not want to stand before the Court and look

 6   around and see those who are free and will never be held

 7   accountable for their part in my pain.  I also asked my aunt

 8   not to read my statement until she was -- hold on.  And see

 9   those who are free and will never be held accountable for

10   their part in my pain.

11            I also asked my aunt not to read my statement

12   until she was at court to make sure she read every word and

13   to make sure she or anyone else couldn't or wouldn't edit

14   anything out.

15            I know, Your Honor, my statement is supposed to be

16   some sort of victim impact statement, and my aunt said that

17   the DA could assist me, but I wanted to write this on my own

18   so that you could hear my voice and no one else's.

19            I was a victim -- these are my words -- and I have

20   a right to be heard the way I want to be heard, and no one

21   can argue otherwise considering the crap I was allowed to be

22   put through just so you guys could have a case.

23            I was also asked -- I also asked my aunt to read

24   my letter last which I hope is being honored since it was I

25   who endured the most abuse from Mr. Martinez.
```

```
 1              I was a victim of Mr. Martinez, keyword being
 2   "was."  It doesn't mean I have to continue to be a victim.
 3   When my mom first started dating Mr. Martinez, I was four
 4   years old.  I liked him because he had a lot video games,
 5   and he and I both liked Sonic the Hedgehog a lot.  When they
 6   officially got together and my mom and I moved in with
 7   Mr. Martinez, the abuse basically started immediately.
 8              THE COURT:  Take your time.
 9              MINOR VICTIM 1 ADOPTIVE MOTHER:  I didn't know
10   anything else.  I never had a dad.  But I had one that I
11   thought loved me, and I remember being very excited and just
12   really happy to have a dad.  I remember wanting to have a --
13   to have matching cowboy boots and hats, matching clothes.
14              Even with the abuse I still loved Mr. Martinez,
15   and I still saw him as my dad, and I still wanted the
16   matching clothes and the boots.  I wanted to spend all my
17   free time with him.
18              I don't know if it was when Mr. Martinez started
19   taking photos of me or when he started abusing my cousin
20   when something inside me clicked telling me this is not
21   okay.
22              But, again, I didn't know anything different.  I
23   know I asked him to stop a few times, and he didn't listen.
24   That's when I started believing that maybe I was a shitty
25   kid and I deserved the abuse.
```

1    I didn't know what I had done that was so bad to

2    deserve it, but it had to be something bad because otherwise

3    why would I be going through this kind of abuse for so long?

4    I thought it was my fault.  It had to be my fault.

5    Part of me still thinks it is my fault.

6    I still think it is my fault that my sister will

7    never know who her biological father or mother is, not that

8    my aunt is doing a bad job.  It's just the guilt I carry.

9    I feel guilty because I don't have a dad.  My

10   biological dad didn't want me even after the FDS found him,

11   told him what happened to me.  He showed up for one meeting

12   with me and then he moved back to Arizona.  Here I am a

13   13-year-old boy without a father, and I feel guilty because

14   I lost two dads, none of which is my fault.

15   I also lost my biological mother.  I was taken

16   away from her too.  I feel guilty for that too.  I know it

17   was not my fault, but I still feel guilty.

18   I feel a tremendous amount of guilt for the way

19   the house was raided and the PTSD that my grandma received

20   and my grandma Bertha suffered from.  Your Honor, I actually

21   don't blame Mr. Martinez for that guilt.

22   Homeland and FBI and whoever got trigger happy

23   that morning and executed that whole raid very poorly.

24   Your Honor, my sister and I were almost shot that day

25   because the SWAT team didn't bother to wait and see if we

1    were inside the house to get us out of the house first.

2              I'm sorry, Your Honor.

3              THE COURT:  You do not need to apologize at all.

4    You take your time.

5              MINOR VICTIM 1 ADOPTIVE MOTHER:  Your Honor, my

6    sister and I were almost shot that day because the SWAT team

7    didn't bother to wait and see if we were inside the house to

8    get us out of the house first.

9              Mr. Martinez kept guns inside the house which was

10   information Homeland and the FBI had.  This is some

11   background information I wanted you to know because it's one

12   of the reasons why I am not standing here and reading my own

13   statement.  I digress.

14             I carry a lot of guilt about a lot of things that

15   are not my fault.  I refuse to let them go.  I don't know

16   why.  Most of the major things I feel guilty about are due

17   to stupid adults making very, very bad choices.

18             I know there are and will always be images of this

19   once naive innocent naked kid, and one day adult me will

20   feel guilty about that too for not protecting the child in

21   me.

22             I have a bad attitude towards the world and

23   people.  I trust very little and think the worst of myself.

24   I sometimes feel alone and unworthy of any kind of love,

25   respect, or kindness.  I know I have a long way to go.  But

```
 1    I know I have a very annoying, stubborn, strong, loving aunt

 2    who won't let me walk that path alone.

 3            I know, Your Honor, that Mr. Martinez needs to be

 4    punished for hurting me.  I don't believe in violence.  It's

 5    barbaric.  The way our justice system is set up, the only

 6    way that he can get punished is by sending him to an eight

 7    by eight cell for a set number of years.

 8            So, basically, the Court is going to be sending

 9    Mr. Martinez on a very long timeout for what he did to me.

10            He's not the only person responsible for the

11    trauma, anger, guilt, and the PTSD I have.  I am angry at

12    the DA, FBI, Homeland, and you, Your Honor.  No one in the

13    court except for Mr. Martinez is actually going to have to

14    have consequences for their part in hurting me.

15            The way I see it is the Court is so mad and

16    disgusted at what Mr. Martinez did to me and my sister and

17    my cousin that the Court won't even look at the wrong

18    choices they made in the case.

19            Your Honor, please understand I want justice, but

20    I want true justice even against those who claim to have

21    rescued me, which means I want blind justice.  I don't think

22    you, Your Honor, or anyone else in the courtroom can give me

23    that today.

24            Thanks for listening.

25            He put his name down.
```

```
 1                THE COURT:  You don't have to read it.
 2                Ms. Myers, is there anyone else who wished to
 3      elocute or was that everyone?
 4                MS. MYERS:  That was everyone, Your Honor.
 5                THE COURT:  All right.  Thank you to all those
 6      individuals that had the bravery and courage to let the
 7      Court know how they feel.
 8                To the -- only because I don't want to mention
 9      names, but to the person who just spoke, please express to
10      your family that I heard their letters, and I commend you,
11      ma'am, for having the courage to come up and for taking the
12      responsibility that you have taken.
13                I read your letter.  I know that you had said the
14      children were not in the cards for you, are not something
15      you thought about, but you did something that is incredibly
16      brave and commendable by stepping up to care for them, and
17      it's clear that you do because I noted, as you were
18      speaking, you made it clear to me that these are your
19      children, and your son has indicated that he knows that you
20      have his back.
21                I think I noted that he described you as the
22      strong annoying aunt that won't let him walk the path alone.
23                And I say this, and I have said this many times.
24      But in this case, I think it is particularly relevant.  I
25      tell people that are going through challenges, and
```

```
 1   unfortunately, in this business we see that a lot --
 2   something my mom used to tell me -- when you are going
 3   through hell, you got to keep going because you are going to
 4   get out.
 5            And I am not here to suggest or be naive and say
 6   that this path for you is a long one, and it's a challenging
 7   one, but there is light at the end of this.
 8            And your children and your bravery are going to
 9   help all of you get through this, and that applies to all
10   the folks that I heard today and even those that I didn't.
11            This is a real tragedy.  There is no other way to
12   describe it.  It is just an outright tragedy.
13            So, again, I commend you all for being brave, very
14   brave in expressing your thoughts to this Court.
15            So, Ms. Myers, let me hear from the government
16   now.
17            MS. MYERS:  Yes, Your Honor.
18            The sentence that the government seeks is
19   appropriate here.  The sentence that defendant seeks on its
20   face is illegal.
21            The government moves, pursuant to the sentencing
22   guidelines under 5K, to reduce the sentence.  The government
23   did not move under 3553(e) to remove the mandatory minimum.
24   Therefore, the Court cannot sentence the defendant to less
25   than 240 months in prison.
```

```
 1              THE COURT:  Ms. Myers, I am sorry.  Just like with
 2   Mr. Furstman, I tend to interrupt.
 3              I hear you a thousand percent.  I understand where
 4   you are coming from relative to that.
 5              I guess couple of questions that come up in my
 6   mind.  And this may be difficult to answer, but should I
 7   assume, based on the Indictment and the names of the
 8   defendant, specifically the order of the defendants, would
 9   that suggest the severity of the conduct of the defendants?
10              Because I note in the First Superseding Indictment
11   it's Mr. Harrell, Mr. Brinson, Mr. Martinez, and
12   Mr. Lawniczak.
13              I know just from prior experience generally in the
14   past -- and I have been gone a long time.  So times could
15   certainly have changed -- that suggest roles,
16   responsibilities, severity.  Is that accurate here?
17              MS. MYERS:  Your Honor, I think that Defendant
18   Harrell's conduct in this case is by far the most severe,
19   and he should be the Number 1 defendant.  And so, yes, the
20   office does, as you accurately recall, rank defendants in
21   order of known culpability.
22              At the time of the First Superseding Indictment,
23   we knew that Defendant Brinson had two victims, and we knew
24   that Defendant Martinez had two victims.  So I think it was
25   more of an election of which name came first.
```

```
 1          We've now learned the defendant had additional
 2   victims.  If we were to rewrite the Indictment, I don't know
 3   what the renewed order would be except that Defendant
 4   Harrell would be first and Defendant Lawniczak would be
 5   last.
 6          But in terms of relative culpability, I don't
 7   think that Defendant Martinez's falls anywhere close to
 8   Defendant Lawniczak who Your Honor has already sentenced.
 9          THE COURT:  I know that.  And I ask that -- I am
10   just putting my cards on the table here.
11          One of the factors is sentences and avoiding
12   unwarranted disparities, not comparing him to Lawniczak, not
13   comparing him to Harrell.
14          I am just trying to understand, particularly in
15   light of letters that you referenced where, for example,
16   Mr. Brinson is trying to convince Mr. Martinez not to
17   testify.
18          Should I assume or can I assume that, based on
19   your recommendation here, the recommendation will be at or
20   near the same for Mr. Brinson or not?
21          MS. MYERS:  I think -- well, Mr. Brinson did not
22   cooperate, Your Honor.
23          THE COURT:  Right.
24          MS. MYERS:  So I believe the government intends to
25   make a guideline recommendation for both Mr. Brinson and
```

```
 1  Mr. Harrell, which I don't have the PSR yet, but our
 2  internal calculations are that they are similarly situated.
 3          At least, Brinson would be 2 victims probably well
 4  exceeding a Level 43.  Defendant Harrell has, I think,
 5  approximately 22 victims.  So his guideline range would be
 6  even higher than that.
 7          THE COURT:  And, again, putting all our cards on
 8  the table, the one issue that I think is worth -- worthy of
 9  discussion, at least from the Court's perspective, relates
10  to the 5K1 in this respect.
11          And to be clear, I'm not criticizing the
12  government.  I'm not criticizing Mr. Furstman.  You are all
13  doing the jobs you need to do.  I am just looking at it from
14  my vantage point.
15          If in fact Mr. Martinez provided the cooperation
16  that's at least outlined by the government, is there a worry
17  or concern that a one level departure perhaps might not
18  encourage others to do what Mr. Martinez did?  And whether
19  you believe -- and I'm sorry.  There are a number of
20  questions -- whether you believe Mr. Martinez's cooperation
21  was a significant, neutral, or minor factor in, for example,
22  getting Brinson to plead?
23          MS. MYERS:  Yes, Your Honor.
24          So in terms of encouraging others and accurately
25  evaluating defendant's cooperation, what the government put
```

1   in its papers is accurate.  There are some points of

2   clarifications as to what defendant put in his papers which

3   I can address.

4           I think what is important to note here is that the

5   level of cooperation that the government has recommended and

6   the 5K departure of one level is also based on the

7   functionality of the guidelines.

8           And other offices will sometimes value cooperation

9   based on a percentage of a sentence rather than by guideline

10  level because at the top of the guideline you drop

11  functionally level -- from 43 to 42, you drop from life to

12  30 years.

13          That's a very significant drop.  Each level you

14  drop at the top of the chart is a massive decrease in the

15  sentence.

16          So while, if this defendant, we're operating at a

17  much lower guideline level, the government may have

18  recommended a greater number of levels of decrease to the 5K

19  to accurately capture the value of his cooperation.

20          And I know that the Court is in a difficult

21  position to evaluate this, but I can tell you that we spent

22  a long time working through what this recommendation should

23  be.

24          THE COURT:  Right.  And that's why I said earlier

25  I'm not criticizing the government.  I mean, it's been

1    almost ten years, but I remember those processes internally;

2    and I only assume a similar process occurred to come up with

3    this recommendation.  I just nevertheless wanted to ask

4    these questions relative to that.

5              MS. MYERS:  Yes, Your Honor.

6              In terms of the likelihood that defendant's

7    cooperation induced defendant and Harrell -- Defendant

8    Harrell and Brinson to enter into a plea, you are right, and

9    defense counsel is right that, oftentimes when a cooperator

10   presents information and then the defendant subsequently

11   pleads, we credit that defendant for inducing those pleas.

12             But that's not the case here in the government's

13   estimation.  The defendant met with the government twice --

14   once was on April 27th, 2018, and the other was on

15   September 17th, 2018.

16             After the information was disclosed, Defendants

17   Brinson and Harrell then filed motions to suppress which the

18   Court ruled on.  After that period of time --

19             THE COURT:  In fairness though, in those motions

20   to suppress the government filed letters from Brinson to

21   Martinez that Martinez gave to the government; correct?

22             MS. MYERS:  Yes, Your Honor.

23             THE COURT:  Go ahead, continue.

24             MS. MYERS:  And so defendant's information was

25   useful that he provided -- the letters were useful for

1    purposes of litigating the motions to suppress.

2         But focusing on whether defendant's cooperation

3    ostensibly induced those plea agreements, we then entered

4    into plea negotiations with both Defendant Harrell and

5    Brinson after the conclusion of the litigation of their

6    motions to suppress.

7         And both of those defendants rejected our plea

8    offers.  It wasn't until three years after defendant's first

9    cooperation with the government that Brinson and Harrell

10   both pleaded open, and I think that's because there was an

11   imminent trial date.

12        More importantly, the evidence that the government

13   has against those defendants is very damning.

14        For example, in Defendant Harrell's digital

15   devices, which we had access to even before we arrested

16   Martinez, there are a number of images of child sexual abuse

17   material with Defendant Harrell's face in them.

18        We also subsequently gained access to Defendant

19   Brinson's digital device, which we had plenty of evidence

20   against Defendant Brinson from Defendant Harrell's device,

21   and then we got additional evidence against Defendant

22   Brinson when we got into his digital device which also

23   includes images of child sexual abuse material with

24   Defendant Brinson's face in it.

25        And so we believe that -- the government believes

```
 1    that it is those factors that compelled Harrell and Brinson

 2    to take the plea, not the possibility that Defendant

 3    Martinez might testify against them.

 4            Moreover, Defendant Martinez provided some

 5    additional details about the meet-ups between the three

 6    defendants, but the government already was aware of most of

 7    that information based on the images that we have recovered,

 8    based on credit card receipts, and based on cell sites

 9    location information.

10            THE COURT:  To be clear, if the case went to

11    trial, the government had every intention on calling

12    Mr. Martinez; correct?

13            MS. MYERS:  We had not made that decision,

14    Your Honor.  We had continued his sentencing until after the

15    trial date so that his cooperation -- he would have the

16    opportunity to testify if we decided to call him.

17            But as the Court can appreciate, there are

18    significant concerns about calling someone like defendant to

19    testify in a case.

20            THE COURT:  Okay.  Then talk to me, if you would

21    now, about the individual in Ohio and the 200 years.

22            Again, I'm not criticizing the government.  I just

23    want to make sure I understand from you directly, sort of,

24    what the government views Mr. Martinez did in that regard.

25            MS. MYERS:  Yes, Your Honor.
```

1          So in that situation, we received information from

2   defendant's attorneys in the first of two attorney proffers.

3          In that first letter from defendant's attorneys,

4   it provided the passcode to one of defendant's computers.

5   From that computer, we were able to recover the chats

6   between defendant and the offender in Ohio.

7          THE COURT:  You did not have the passcode prior to

8   the information provided in the proffer?

9          MS. MYERS:  Correct, Your Honor.

10         THE COURT:  Okay.

11         MS. MYERS:  At the time of his arrest, defendant

12   encrypted all of his digital devices.

13         And notably defendant has attempted to give us the

14   passwords to his 2 terabyte hard drives which he had

15   indicated is -- contains the majority of his child

16   pornography collection but he -- what he provided us were

17   inaccurate, and we have not been able to access the

18   2 terabyte hard drive.

19         However, the information we received from his

20   attorneys did allow us to access his computer and recover

21   those chats.

22         Based on the information that was in the chat,

23   combined with the piece of information that came from

24   defendant Brinson, the government was able to identify the

25   offender in Ohio.

```
 1          We then had a second attorney proffer letter from
 2   defendant's attorneys.  And in that letter, it provided
 3   corroborating details to what -- the information that was in
 4   the chat.  We then used all of that information to find and
 5   identify the offender in Ohio who was then arrested.
 6          All of that happened prior to -- because that
 7   offender was arrested on March 14, 2018.  So all of -- that
 8   arrest happened prior to actually sitting down with
 9   Defendant Martinez for his proffer.
10          THE COURT:  But in fairness, Mr. Furstman didn't
11   just come up with the information.  He had to have gotten it
12   from the client; right?
13          MS. MYERS:  Yes, Your Honor.  And that's why we
14   have credited him with giving us information that allowed us
15   to find the offender.
16          THE COURT:  That individual in Ohio, was that
17   individual prosecuted federally or state side?
18          MS. MYERS:  He was prosecuted federally in
19   Indiana.  He had a residence in two states.  It was the
20   district in Indiana, and DOJ Attorney Lauren Kupersmith
21   actually assisted on that prosecution.  If you have specific
22   questions about it --
23          THE COURT:  No, that was it.  Thank you.
24          MS. MYERS:  Did Your Honor have any more
25   questions, or did you want me to --
```

```
 1          THE COURT:  Continue.  I may pipe in as I am want
 2   to do, but go ahead.
 3          MS. MYERS:  Defense counsel noted that the facts
 4   here are difficult.  It is hard to envision a word that
 5   fails to encapsulate the facts more than difficult.
 6          I think actually defendant's description was
 7   probably more accurate when he said he did evil because
 8   that's what he did.
 9          The videos and the posts are the heart of
10   defendant's conduct, but the Court here has an advantage
11   through the chats which allows you to see into the mind of
12   the defendant.
13          The chats revealed that defendant is someone who
14   told Brinson that he should have ejaculated on minor
15   Victim's 3 face when they were abusing their victims
16   together.
17          The chats revealed that defendant is someone who
18   told Brinson to get Minor Victim 3 drunk on whiskey
19   chocolate so Brinson could rape the child.
20          The chats show the defendant is someone who knew
21   that he and others caused physical pain in his victims.
22   Think about that.
23          And instead of expressing sympathy, stopping,
24   defendant noted that, quote, "A great bribe makes any boy
25   forget," close quote.  Then there is a smiley emoji.
```

1    That is the physical pain that defendant inflicted

2    was equally bad, if not worse, with the way the defendant

3    manipulated his victims.  He preyed upon Minor Victim 1's

4    desperate need for a family, and you heard him talk about

5    that in his letter to the Court.

6    He exploited that Minor Victim 2 was barely verbal

7    except for when she cried out, "Help me," when it was

8    defendant who was the one who was getting her ready for bed.

9    He exploited that Minor Victim 3 was in Brinson's

10   custody and control and, therefore, gave him access to abuse

11   that child.

12   And he exploited that Minor Victim 4 had no other

13   place to go, and manipulated that child into not disclosing

14   as well.

15   The sentence that the defendant seeks is offensive

16   to the victims and ignores the pain and anguish that they

17   suffered and continued to suffer because of him.

18   Indeed where are the children in all of the

19   letters that were submitted in support of the defendant?

20   These children were mentioned as an afterthought.

21   They sound like they're being referenced in the

22   victims in the distribution or receipt cases where the

23   family members don't know the children but they know the

24   defendant.

25   That's not the case.  These children are their

1    family members too.  And they weren't talked about.  Their

2    trauma and their pain has not been acknowledged by this

3    family.

4         Turning to defendant's argument, defense counsel's

5    observation about his client -- about their client's growth,

6    especially without a declaration or supporting evidence,

7    should hold little to no weight.

8         Growth is easy to come by once caught and in

9    prison and away from the possibility of offending.  But it

10   does not make up for the years and years of abuse of these

11   children, nor does it account for all of the 3553(a)

12   factors.

13        Regarding the cooperation, the Court's right.  The

14   government could have said life, and we would not have been

15   out of the realm of possibility given that in reality

16   defendant's offense level is 51.

17        And I recognize there is anger on the defense's

18   part because the guidelines do functionally lop it off at

19   Level 43.  But it doesn't mean that the Court can't consider

20   the fact that but for the fact that the guidelines just

21   don't go up to 51 and say life the whole way, that is what

22   we would be talking about, and that is what we would be

23   working from, and that is part of what has formed the basis

24   of our recommendation, Your Honor.

25        Regarding being threatened by Defendant Brinson

1    and Harrell, which is what is mentioned in defendant's

2    papers, there is no evidence of that.

3                Even in the letters that Brinson wrote to Martinez

4    in prison, he talked about his own interviews with the

5    government, and he talked about how he didn't want the

6    government to get into his computer -- there is that

7    evidence on it for him.  And he encouraged defendant not to

8    meet with the government because he doesn't like us, and he

9    seems to observe that the government didn't seem to like

10   him.

11               But there was never a threat.  There has never

12   been a threat from either of these defendants that we are

13   aware of or that has been provided in evidence to us against

14   defendant.

15               And it is true that talking with the government is

16   always perceived as risky.  But defendant is positioned no

17   differently here than anyone else who cooperates with the

18   government.

19               THE COURT:  Ms. Myers, if you could, forgive me

20   because we have been at this now for almost two hours.

21               My court reporter's fingers are literally about to

22   fall off.  If we could take just a five-minute break just --

23   and everyone can stay on the call.

24               I don't want -- and I am going to stay on the

25   bench.  Just give her a moment to fix things with the

 1    court reporter machine, then we will resume.

 2              My apologies to everyone.  I just want to make

 3    sure we get this right.  I just want to take a five-minute

 4    recess, and we'll resume.

 5         (Recess taken 3:48 to 3:52 P.M.)

 6              THE COURT:  All right.  If everyone is ready,

 7    Ms. Myers, I don't see if -- if you're in the room, if you

 8    want to resume we're ready.

 9         (Brief pause in the proceedings.)

10              THE COURT:  Go ahead.  Ms. Myers, you may

11    continue.  We're back on the record.

12              MS. MYERS:  Thank you, Your Honor.

13              Regarding the other information defense counsel

14    represents the defendant gave us about the Website -- his

15    passwords.  That information -- the passwords were useful to

16    the government, as I have explained.  But in terms of how

17    encryption works and how Website A worked, we knew that.

18    And they have been illuminative for defense counsel, but it

19    did not provide any new information to the government.

20              Again, Your Honor, the amount of departure the

21    government is asking for in terms of cooperation we do

22    believe accurately captures the value of defendant's

23    cooperation.

24              THE COURT:  Let me ask you this, Ms. Myers.

25              If Mr. Martinez did not cooperate, what would the

1    government's recommendation be?

2              MS. MYERS:  Life.

3              THE COURT:  Okay.  Go ahead.  Continue.

4              MS. MYERS:  Turning to the 3553(a) factors -- and

5    this is a point that is addressed in defense papers which I

6    just want to address here -- I don't want to belabor the

7    point in the government's sentencing position because I know

8    the Court's familiar with them.

9              But as -- in terms of the defendant's family

10   history, there is no doubt that there are generational

11   trauma in this family.

12             But the letters of support, to the extent the

13   Court decides to give them credence, should be taken with a

14   deep skepticism given that we know from and Mn.M's letter

15   that this family's job is to support the defendant.

16             In page 11 of defense papers, they note that the

17   family went to counseling at the time that Rosa left.

18             The reason that happened, which isn't clear in the

19   defense papers, is that because that's the time that

20   defendant's father became a registered sex offender.

21             This family has been through this before, and it

22   didn't stop what happened in this case.  So I think the

23   Court should approach with a deep scepticism the family's

24   claim that they will keep watch on this defendant and

25   prevent this from happening again.

1          The defendant's brother writes the defendant's

2     crimes are the result of his horrible childhood.  But Mn.M

3     have provided a shining example of what the defendant could

4     have done and have should done.

5          She sought counseling when she was 21 years old.

6     She never wanted to have children of her own because she

7     understood the danger of her family's upbringing.  And she

8     continued to seek therapy and help.

9          And what is most important is that part of Mn.M's

10    motivation and part of the motivation of many victims of

11    traumatic family experiences is that they purposely

12    understand the pain inflicted on them and choose not to

13    inflict it on another generation.

14         What happened to defendant is no excuse for what

15    he did to these children.  If anything, he should know

16    better than anyone the trauma that is inflicted when he did

17    what he did.  And he did it over and over again, Your Honor.

18    It wasn't a one-time event.  You've heard from these

19    victims, it happened for years.  The defendant made a choice

20    over and over to abuse these children.

21         Jessica Martinez notes the defendant is utterly

22    remorseful, quote/unquote.  That's on page 18 of defense

23    papers.  There is an inaccuracy, however.

24         At page 18, Footnote 4 indicates she lost custody

25    because of what defendant did.  That's not right.  She lost

```
1   custody because she endangered the children in her care.

2          THE COURT:  As it relates to that -- I don't mean

3   to touch upon overly sensitive subject, but I need to ask.

4          If my reading was correct, one of the statements

5   that you provided suggests -- and maybe I misread this --

6   that she was involved with taping, physically taping arms?

7   Is that inaccurate, or did I misunderstand something?

8          MS. MYERS:  That is what Minor Victim 1 disclosed

9   in his forensic interview, Your Honor.

10         THE COURT:  But she has not been charged, to your

11  knowledge, with any criminal misconduct.

12         MS. MYERS:  She -- my understanding is she's not

13  been federally charged.  I can't represent whether she's

14  been charged by the state.  I don't believe she has.

15         THE COURT:  Fair enough.  I just was curious.

16  Thank you.  Please continue.

17         MS. MYERS:  In her letter, it's clear that she

18  either does not know or is unwilling to admit that both of

19  her children were victims of Martinez, but it makes her

20  letter something that the Court should not rely on in

21  evaluating this defendant.

22         She is doing what she did before.  She's

23  supporting Martinez at the expense of her children.

24         Defendant's mother is now in therapy, and I

25  commend her for that.  It sounds like there is a lot of
```

```
 1    healing to happen in this family.

 2              But, frankly, it's too little too late in terms of

 3    what this defendant did.  We have no guarantees that this

 4    family will ensure that defendant doesn't relapse.  Indeed,

 5    if past performance is any indication, they probably won't.

 6              Indeed, in his victim impact statement,

 7    Minor Victim 4 wrote about one of his nightmares where he

 8    dreamed the defendant's mother was trying to get him out of

 9    jail.  That's how he knows what she's after -- not about

10    protecting the victims, about getting defendant out of jail.

11              Regarding defendant's argument for the need for

12    deterrence, he argues that his cooperation will send a

13    message to other offenders that they should stop because

14    they will know that others are willing to testify against

15    them.

16              Defendant's cooperation is not public.  All of the

17    plea documents and other related documents have been filed

18    under seal to protect him from retaliation.  And so the

19    claim that defendant's cooperation will deter other

20    offenders borders on the frivolous.

21              Regarding public safety, defendant argues that the

22    supervised release restrictions are strong and he will be a

23    registered sex offender.  But defendant rapes three children

24    living in the same house as his father, a registered sex

25    offender, is not a family you can trust to keep children
```

1    safe.

2              Moreover, to quote from United States versus

3    Johnson 529 U.S. 53 at page 59, year 2000, quote,

4    "Supervised release fulfills rehabilitative end distinct

5    from those served by incarceration."

6              Defendant asks that the Court put him on extensive

7    supervised release because that will be the equivalent to an

8    additional prison sentence.  That's not the case,

9    Your Honor.  They serve different purposes.

10             And as the Court has previously acknowledged in

11   the United States versus Iray, we wouldn't send anybody to

12   prison if supervised release was just as effective.  We

13   would put everybody on supervised release.  And the cite for

14   that is 612 3rd 1160 at 1210, 11th Circuit 2010.

15             Defendant writes, it is important to realize

16   before facing the fork in the road at which he currently

17   finds himself, he had taken all of the proper steps.

18             No.  The fork in the road is the moment of choice

19   before defendant ever harmed a child.  He could have made

20   the choices his sister did where every single fork offered

21   to him before the next abuse and the next victim and the

22   next exploitation with every mouse click on Website A.

23             This is not a one-time offender who regrets one

24   single mistake.  Defendant has four victims, each of which

25   sustained more than one abuse at the hands of the defendant.

```
 1   This is an offender who chatted about abuse on multiple

 2   platforms, planning how to abuse and exploit more children

 3   and encouraging others to do the same.

 4          All of those times he could have stopped and taken

 5   the proper steps.  He doesn't have any choices now, and he

 6   did what he could to help himself when faced with the

 7   enormity of the crimes.  His sentence should be just but

 8   certainly not a windfall, Your Honor.

 9          Defendant has indicated that he won't reoffend,

10   and his attorneys have made similar representations.

11          To the extent the Court has already seen who

12   defendant really is by reading his chats, defendant can also

13   gain one last insight into where this defendant is in terms

14   of reading the letter to the Court.

15          Defendant talked about how he's taking positivity

16   classes, which is good, and how he's working on getting a

17   college education, also good.

18          But he also wrote how he took a parenting class.

19   Let that sink in.  Who does this defendant think he is going

20   to be parenting?  What children does this defendant think he

21   is going to be around at any point in time such that that

22   parenting class will be of value?

23          This defendant has proved that he is a danger to

24   the community.  He has committed horrible crimes.  And his

25   letter indicates that he is in no way rehabilitated.
```

 1   Therefore, the government submits that the sentence it

 2   requests of 55 years incarceration is appropriate here.

 3          Unless the Court has any questions, I will submit,

 4   Your Honor.

 5          THE COURT:  No.  I don't have any questions.

 6   Thank you.

 7          Mr. Furstman, out of respect for you, I think you

 8   indicated, if you wish briefly, I will give you a chance to

 9   respond.

10          You are on mute, sir.

11          MR. FURSTMAN:  Your Honor, just a brief reply.

12          The presentation that was made on behalf of the

13   government was emotional, was very difficult to listen to,

14   and it has resulted in some angry people, both at

15   Mr. Martinez as well as the, quote, DA, end quote, the FBI,

16   and every other law enforcement agency involved in the

17   investigation of this case.

18          So I think that -- well, I don't want to victimize

19   the children again, but I think the Court should consider

20   the tenor of their hostility.  And I understand it may be a

21   direct result of this case.

22          One area of inquiry that the Court had was with

23   regard to the assistance that Mr. Martinez had provided.

24   And one of the things that I think is probably of the

25   greatest significance that Your Honor did not inquire

 1  regarding -- in your colloquy with Ms. Myers is the idea

 2  that Mr. Martinez provided information that identified two,

 3  if not three, other young victims who were able to be

 4  identified and what I would hope is protected from the other

 5  individuals that are engaged in this kind of conduct.

 6          I also find somewhat troubling and disingenuous,

 7  with all due respect, that on every aspect of cooperation

 8  that the government related, it kept coming out at the end

 9  like the proverbial zinger, "but it really didn't provide us

10  with the information that got us to where we are."

11          Mr. Martinez cooperated, he entered into an

12  agreement, he cooperated fully, he provided substantial

13  assistance and substantial information, and he should get

14  the benefit of the bargain.

15          And the other aspects and the other comments I

16  don't think are necessarily, again not to offend, but worthy

17  of response.

18          I would use this one example.  The idea that

19  Mr. Martinez is being denigrated for the fact that he

20  took -- by Ms. Myers for the fact that he took a parenting

21  class is -- misses and doesn't capture the idea that

22  Mr. Martinez took a parenting class because, among other

23  things, it was an attempt to try to understand and put into

24  perspective the things that he had done, not in anticipation

25  of starting a new family.  That's not realistic at all.

```
 1              He's in custody.  He will remain there for
 2     sometime, and he is not considering it for that purpose.
 3     But it's an attempt at his own self-growth which will inure
 4     to his and to society's benefit in terms of giving him a
 5     second chance.
 6              And in conclusion, I think one of the most telling
 7     and poignant moments in Ms. Myers's presentation was of
 8     the -- Mr. Martinez's sister.
 9              Mr. Martinez's sister acknowledged that there are
10     second chances.  And Mr. Martinez, we would submit to the
11     Court, should have a second chance.
12              And the government to say, if Mr. Martinez hadn't
13     cooperated, we would have recommended life.  At 30 years old
14     and 55 years on top of that, that is the functional
15     equivalent, I believe, of a life sentence.
16              I would ask the Court -- and I know it's not an
17     easy task -- but to fashion a resolution in a sentence that
18     is appropriate and meets all the sentencing goals that the
19     Court needs to be concerned with but that also provides
20     Mr. Martinez an opportunity to see and enjoy his freedom in
21     the future.
22              Submitted.  Thank you so much, Your Honor.
23              THE COURT:  All right.  Thank you, Counsel.  All
24     right.
25              Well, there is no dispute with respect to the
```

 1    calculation of the guidelines.  So that's not an issue at

 2    all here.  The agreement is accepted.  I find the report to

 3    be accurate, and I adopt the report and the calculations.

 4         I think -- well, it's been discussed, but I think

 5    for the record we just need to be clear that the total

 6    offense level in this case -- sorry.

 7         The total offense level gets capped at, like, 43.

 8    Criminal History Category I, the guideline range is life.

 9    Supervised release range is five years to life.  Probation

10    is not an option in this case.  The range, the fine range is

11    50,000 to $500,000.

12         In making an individualized determination based

13    upon the facts I have considered -- and I am considering the

14    factors described in Title 18 United States Code Section

15    3553(a), including, but not limited to, the nature and

16    circumstances of this offense.  This is a horrific crime.

17    There is no if's, and's, or but's about it.

18         Evil is a -- that's not even a strong enough word

19    from this Court's opinion.  And the sentence needs to

20    reflect the seriousness of the offense and to promote a

21    respect for the law and provide adequate deterrence for

22    criminal conduct and to protect the public from further

23    crimes from Mr. Martinez and to provide him with whatever

24    treatment that he can and certainly does need as he moves

25    forward.

```
 1          And I also am considering, as I have alluded to,

 2   the need to avoid unwarranted sentence disparities amongst

 3   defendants with similar records who have been convicted of

 4   similar offenses and the need to provide restitution for the

 5   victims in this case.

 6          Ms. Myers -- correct me if I am wrong -- will

 7   there need to be a restitution hearing at some point

 8   following this sentencing as well?

 9          MS. MYERS:  Yes, Your Honor.  We've requested that

10   the Court set it over for 90 days.

11          THE COURT:  Okay.  Thank you.  Thank you for

12   reminding me of that.

13          MR. FURSTMAN:  Your Honor, may I inquire?

14          I am sorry to interrupt, but I might have missed

15   something when Your Honor was talking about the -- did Your

16   Honor reference the total offense level which was -- is a

17   43, or it would seem to me, if it caps at 43, it's 43.

18          The three levels for acceptance of responsibility

19   should come off the 43 and the one level from the government

20   should come off accordingly.

21          THE COURT:  No, no.  Look.  The guidelines -- by

22   the presentence report, the guidelines actually come out to

23   51.  I just said it goes -- I used 43 because that's the max

24   in the guidelines.  So I am mistaken.  The guideline

25   calculation by the presentence report that I don't think
```

1    anyone disputes is actually, when everything is grouped --

2    let me look on page -- paragraph 97 that puts it at 54 and

3    then the minus 3 gets you to 51.  That's the total offense

4    level.

5              But I'd say it's capped, capped by virtue of the

6    fact that it's higher than what's on the statutory table.

7    That's why I said 43.  So it's not 43 minus 3.  54 is the

8    total offense level minus 3 gets to you 51 which exceeds the

9    sentencing table.

10             Does that clarify what we're talking about?

11             MR. FURSTMAN:  Yes, Your Honor.  I would -- I just

12   want to be clear that the -- that -- where the three levels

13   and the one level were coming off of, the 51 or the 43.

14             THE COURT:  Again, your position, obviously, it

15   comes off of the 43.

16             MR. FURSTMAN:  Correct.

17             THE COURT:  I don't think that's accurate.  I

18   believe it comes off of the total adjusted offense level,

19   which is 54 minus 3 which is 51.

20             So as I was stating -- look.  There is a lot of

21   hostility as it relates to this case and rightfully so.

22             The actions in this case have devastated families

23   throughout.  Again, I commend all the victims and their

24   families, the individuals that took the time today to be

25   brave enough to come forward and tell their truth, tell

```
 1   their stories.

 2              To the children in particular, I know it's

 3   probably been said to you more and more, but I feel it's

 4   incumbent upon me to say it's not your fault.  You should

 5   not feel guilty.  You did not cause this.

 6              To the parents, it's not your fault.  No one

 7   thinks when they give their child to a relative or someone

 8   they trust that this kind of evil will occur.  It's not your

 9   fault, and you should not feel that way.

10              Easier said than done.  I recognize that.  And I

11   wish for all of you healing as you move forward.  As I said

12   to you earlier, this is a marathon of hell, but you will get

13   through it.

14              And to me the biggest sign of that is the courage

15   you demonstrated by speaking your truth here today.  That

16   kind of courage is going to get you through as you move

17   forward.

18              As it relates to the defense request for a

19   departure, I will be candid with you, Mr. Furstman.  You did

20   an excellent job on behalf of your client.  Can't say good

21   enough things.

22              I'm just not willing to take that risk with this

23   defendant.  I'm not.  The text messages, the conduct here is

24   frightening.  I don't know how else to describe it.

25              And I am not convinced that I have seen or heard
```

 1    anything that suggests or gives this Court comfort that

 2    things will be different.  I just don't see it.

 3            There is a lot of healing that needs to go on on

 4    both sides of the aisle as it relates to this.  But right

 5    now as I stand here, sit here, I'm looking at someone, and I

 6    think I have seen their thinking that suggests a really evil

 7    intent.  And that's just tough for me to get around.  I am

 8    just going -- again, putting all the cards on the table.

 9            So I will now state the sentence, but I will give

10    counsel a final chance to make any legal objections before

11    the sentence is imposed.

12            Does either counsel know of any reason, other than

13    what's been stated, why the sentence should not now be

14    imposed?

15            Ms. Myers?

16            MS. MYERS:  No, Your Honor.

17            THE COURT:  Mr. Furstman.

18            MR. FURSTMAN:  No, Your Honor.

19            THE COURT:  I find that the following sentence is

20    reasonable and sufficient but no greater than necessary to

21    comply with the purposes stated in Title 18 United States

22    Code Section 3553(a).

23            THE DEFENDANT:  Your Honor --

24            THE COURT:  Did someone say something?

25            THE DEFENDANT:  It was me.

```
 1              THE COURT:  Yes, sir.
 2              THE DEFENDANT:  Please, Your Honor, I am asking,
 3    please.  I don't know what else to do to show that I have
 4    changed.  I have been moved from facility.  To say I
 5    cannot -- I can't show that because I have been moving.
 6              I -- it's -- please, I'm trying to do good.  I
 7    believe I have.
 8              I made it clear to my counsel that I have.  You
 9    said you don't see -- you see evil in me, that you don't see
10    that I have changed or things like that.
11              I am changed and still changing for the good,
12    Your Honor.  You don't want to give me that chance, but I am
13    begging you to give me a chance.
14              THE COURT:  All right, sir.  I am going to impose
15    the sentence right now.
16              It's ordered that Mr. Martinez shall pay to the
17    United States a special assessment of $300 which is due
18    immediately.  Any unpaid balance shall be due during the
19    period of imprisonment at a rate of not less than $25 per
20    quarter and pursuant to the Bureau of Prisons Inmate
21    Financial Responsibility Program.
22              I am going to waive any fines in this case as it
23    is clear that Mr. Martinez is unable to pay and not able to
24    pay any fines at this time.
25              Pursuant to the Sentencing Reform Act of 1984, it
```

1   is the judgment of this Court that the defendant, Moises

2   Martinez, is hereby committed on Counts 1, 15, and 16 of the

3   First Superseding Indictment to the custody of the Bureau of

4   Prisons for a term of 660 months.

5           This term will consist of 660 months on Count 1,

6   and 360 months on Count 15 and 16, all to be served

7   concurrently.

8           The Court recommends that the Bureau of Prisons

9   conduct a mental health evaluation of Mr. Martinez and

10  provide all necessary treatment.

11          Upon his release from imprisonment, he shall be

12  placed on supervised release for a term of life.  That term

13  will consist of life on Counts 1, 15, and 16 of the First

14  Superseding Indictment.  All such terms shall run

15  concurrently under the following terms and conditions:

16          He shall comply with the rules and regulations of

17  the United States Probation and Pretrial Services Office and

18  Second Amended General Order 20-04.

19          He shall cooperate in the collection of a DNA

20  sample.

21          While on supervision, you shall pay the special

22  assessment and restitution in accordance with this

23  judgment's orders, and you shall participate in any program

24  to address alcohol abuse as directed by your probation

25  officer.

1         Upon your release from prison, within three days

2    of your release, you shall register as a sex offender and

3    keep that registration current in each jurisdiction where

4    you reside, where you are employed, where you are a student

5    pursuant to the registration procedures that have been

6    established in that jurisdiction.

7         When registering for the first time, you shall

8    register in the jurisdiction in which the conviction

9    occurred if different from the jurisdiction of residence,

10   and you shall provide proof of registration to the probation

11   officer within 48 hours of registration.

12        You shall participate in psychological counseling

13   or psychiatric treatment or sex offender treatment program

14   or any combination thereof as directed by your probation

15   officer, and you shall abide by the rules, requirements, and

16   conditions of such program including submission to risk

17   assessment, evaluations, and physiological testing such as

18   polygraph and Abel testing.

19        You shall -- you retain the right to invoke the

20   Fifth Amendment.

21        As directed by your probation officer, you shall

22   pay for all or part of the costs of psychological counseling

23   or psychiatric treatment or a sex offender treatment program

24   or any combination thereof to the aftercare contractor

25   during the period of community supervision.

```
 1              And you shall provide payment and proof of payment
 2    as directed by your probation officer.  If you have no
 3    ability to pay, no payment shall be required.
 4              You shall not view, possess any materials
 5    including pictures, photographs, books, writings, drawings,
 6    videos or video games depicting or describing child
 7    pornography or child abuse as defined by 18 USC 2256(8), or
 8    sexually explicit conduct depicting minors as defined by
 9    Title 18 United States Code Section 2256(2).
10              This condition does not prohibit the defendant
11    from possessing materials solely because they are necessary
12    to and used for a collateral attack, nor does it prohibit
13    the defendant from possessing materials prepared and/or used
14    for the purposes of your Court-ordered sex offender
15    treatment and when the defendant's treatment provider or
16    probation officer has approved possession of your material
17    in advance.
18              You shall not contact the victims by any means,
19    including any persons by mail or electronic means or via
20    third parties.  You shall remain at least 100 yards from the
21    victims at all times.  If any contact occurs, you shall
22    immediately leave the area of contact and report that
23    contact to your probation officer.
24              You shall not enter, loiter within 100 feet of
25    school yards, parks, public swimming pools, playgrounds,
```

1    youth centers, video arcade facilities, amusement and theme

2    parks, or other places primarily used by persons under the

3    age of 18 without the prior written authorization of the

4    probation officer.

5              You shall not associate or have verbal or written,

6    telephonic or electronic communication with any person under

7    the age of 18 except in the presence of a parent or legal

8    guardian of said minor and on the condition that you notify

9    that parent or legal guardian of your conviction in the

10   instant offense.

11             This provision does not encompass persons under

12   the age of 18 such as waiters, cashiers, ticket vendors,

13   et cetera, whom you must interact with in order to obtain

14   ordinary and usual commercial services.

15             You shall not affiliate with, own, control, or

16   volunteer, or be employed in any capacity by a business or

17   organization that causes you to be in regularly in contact

18   with persons under the age of 18.

19             You shall not affiliate with, own, control, or be

20   employed in any capacity by a business whose principal

21   product is the production or selling of materials depicting

22   or describing sexually explicit conduct as defined by Title

23   18 United States Code Section 2256(2).

24             You shall not own, use, or have access to the

25   services of any commercial mail receiving agency, nor shall

```
 1    you open a post office or maintain a post office box without
 2    the prior written approval of your probation officer.
 3              You shall not possess or view any materials such
 4    as videos, magazines, photographs, computer images, or other
 5    matter that depict actually explicit -- I'm sorry, actual
 6    sexually explicit conduct involving adults as defined by
 7    Title 18 United States Code Section 2257(h)(1).
 8              You shall not view or possess any materials
 9    including pictures, photographs, books, writings, drawings,
10    videos or video games depicting or describing child erotica
11    which is defined as a person under the age of 18 in partial
12    or complete state of nudity in sexually provocative poses
13    viewed for the purpose of sexual arousal.
14              Your employment shall be approved by your
15    probation officer and any change in employment must be
16    reapproved by your probation officer, and you shall submit
17    the name and address of your employer to your probation
18    officer at least ten days prior to any scheduled change.
19              You shall not reside within direct view of school
20    yards, parks, public swimming pools, playgrounds, youth
21    centers, video arcade facilities, or other places primarily
22    used by persons under the age of 18.
23              Your residence shall be approved by your probation
24    officer, and any change in residence must be approved by
25    your probation officer.
```

```
1              You shall submit the address of the proposed
2    residence to your probation officer at least ten days prior
3    to your move.
4              You shall submit to search at any time with or
5    without a warrant by any law enforcement or probation
6    officer of your person, at any property, house, residence,
7    vehicle, papers, computers, cell phones, other electronic
8    communication or data storage devices or media, e-mail
9    accounts, social media accounts, cloud storage accounts,
10   effects, or other areas under your control upon reasonable
11   suspicion concerning a violation of a condition of
12   supervision or unlawful conduct by the defendant or by any
13   probation officer in the lawful discharge of that officer's
14   supervision function.
15             You shall possess and only use those computers and
16   computer-related devices, screen names, passwords, e-mail
17   accounts, and Internet service providers that have been
18   disclosed to a probation officer upon commencement of
19   supervision.  Any changes or additions are to be disclosed
20   to your probation officer prior to your first use.
21   Computers, computer-related devices including personal
22   computers, personal data assistants, Internet appliance or
23   electronic games, cellular telephones, digital storage
24   media, as well as their peripheral equipment that can access
25   or be modified to access the Internet, electronic bulletin
```

1  boards and/or other computers.

2          All computers, computer-related devices and their

3  peripheral equipment used by Mr. Martinez shall be subject

4  to search and seizure.  This shall not apply to items used

5  at the employment's site that are maintained and monitored

6  by the employer.

7          You shall comply with the rules and regulations of

8  the computer monitoring program and shall pay the cost of

9  the computer monitoring program in an amount not to exceed

10 $32 per month per device connected to the Internet.

11         I am going to vacate the drug testing condition.

12         The probation officer is authorized to disclose

13 the presentence report as well as any mental health reports

14 to any treatment providers.  The provider can provide the

15 information excluding that presentence report to state or

16 local service -- state or local social service agencies for

17 the purpose of Mr. Martinez's rehabilitation.

18         Sir, you have the right to appeal your conviction

19 and sentence if you believe that conviction and/or sentence

20 is unlawful.  However, you may have waived or given up your

21 right to that appeal pursuant to your Plea Agreement.

22         Generally those waivers are enforceable.  However,

23 if you feel that the waiver is unenforceable, you can

24 present that theory to the Court of Appeals.  With few

25 exceptions, Notice of Appeal must be filed within 14 days of

1    the judgment being entered.

2            Do you understand that, sir?

3            THE DEFENDANT:  Yes, Your Honor.

4            THE COURT:  If you are unable to afford a

5    transcript of the record, one will be provided at the

6    government's expense.

7            If you can't pay for the costs of an appeal, you

8    can make a request with the Court of Appeals to waive that

9    fee.

10           And if you don't have counsel to assist you in

11   that appeal, you can make a request of the Court of Appeals

12   to have a lawyer appointed on your behalf.  That request

13   also must be done within 14 days.

14           The restitution hearing in this matter will be

15   held January 7th, 2022, at 2:00 P.M.

16           Does that date and time work for you,

17   Mr. Furstman?

18           Can you hear us, Mr. Furstman?

19           MR. FURSTMAN:  Yes, I can.  It shows that I am not

20   on mute.  And yes, that will be acceptable.

21           THE COURT:  January 7th, 2:00 P.M.

22           Ms. Myers, I am assuming someone from the

23   government will be here, but I just want to confirm.  Does

24   that date work for the government, January 7th, 2022, at

25   2:00 P.M.?

```
 1              MS. MYERS:  Yes, Your Honor.  Thank you.

 2              THE COURT:  All right.  Anything further from the

 3    government?

 4              MS. MYERS:  No, Your Honor.

 5              THE COURT:  Anything further from the defense?

 6         Mr. Furstman?

 7              MR. FURSTMAN:  No, Your Honor.

 8              THE COURT:  I will see you all January 7th, 2022.

 9              That concludes this hearing.  Thank you.

10         (Proceedings concluded at 4:32 p.m.)

11                              --oOo--

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1                        CERTIFICATE

 2

 3        I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the

 8   regulations of the Judicial Conference of the United States.

 9

10   Date:  January 20, 2022.

11

12

13

14              ___/S/ CHIA MEI JUI _____

15              Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```

CHIA MEI JUI, CSR 3287, CRR, FCRR
UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA