```
 1                    UNITED STATES DISTRICT COURT

 2         CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

 3          HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

 4


 5   UNITED STATES OF AMERICA,       )
                                     )
 6                PLAINTIFF,         )
                                     )
 7           vs.                     ) No. CR 17-0404-AB
                                     )
 8   1) ARLAN WESLEY HARRELL,        )
     2) JOHN RICHARD BRINSON, JR.,   )
 9   3) MOISES MARTINEZ,             )
     4) KEITH ALLEN LAWNICZAK,       )
10                                   )
                  DEFENDANTS.        )
11   _____)

12

13

14            REPORTER'S TRANSCRIPT OF PROCEEDINGS

15                   FRIDAY, JULY 12, 2019

16                         1:40 P.M.

17                   LOS ANGELES, CALIFORNIA

18

19

20

21

22   _____

23           CHIA MEI JUI, CSR 3287, CCRR, FCRR
                FEDERAL OFFICIAL COURT REPORTER
24               350 WEST FIRST STREET, ROOM 4311
                   LOS ANGELES, CALIFORNIA 90012
25                     cmjui.csr@gmail.com
```

```
 1  APPEARANCES OF COUNSEL:

 2  FOR THE PLAINTIFF:

 3       OFFICE OF THE UNITED STATES ATTORNEY
         BY: DEVON MYERS
 4       ASSISTANT U.S. ATTORNEY
         312 NORTH SPRING STREET, 13TH FLOOR
 5       LOS ANGELES, CALIFORNIA 90012
         (213) 894-2434
 6              - AND -
         U.S. DEPARTMENT OF JUSTICE
 7       CHILD EXPLOITATION AND OBSCENITY SECTION
         BY:  LAUREN KUPERSMITH
 8       1301 NEW YORK AVENUE, NW, 11TH FLOOR
         WASHINGTON, D.C. 20530
 9       (202) 514-1564

10  FOR THE DEFENDANT HARRELL:

11       OFFICE OF THE FEDERAL PUBLIC DEFENDER
         BY: PEDRO V. CASTILLO
12       DEPUTY FEDERAL PUBLIC DEFENDER
         321 EAST 2ND STREET
13       LOS ANGELES, CALIFORNIA 90012
         (213) 894-2854
14
    FOR THE DEFENDANT BRINSON:
15
         GREGORY NICOLAYSEN, ATTORNEY AT LAW
16       27240 TURNBERRY LANE, SUITE 200
         VALENCIA, CALIFORNIA 91355
17       (818) 970-7247

18  FOR THE DEFENDANT MARTINEZ:

19       LAW OFFICE OF SCOTT S. FURSTMAN
         BY:  SCOTT S. FURSTMAN, ATTORNEY AT LAW
20       1190 SOUTH BASCOM AVENUE, SUITE 213
         SAN JOSE, CALIFORNIA 95128
21       (650) 400-9008

22  FOR THE DEFENDANT LAWNICZAK:

23       THOMAS NISHI, ATTORNEY AT LAW

24

25
```

```
 1          LOS ANGELES, CALIFORNIA; FRIDAY, JULY 12, 2019
 2                            1:40 P.M.
 3                             - - -
 4          THE CLERK:  Calling CR 17-0404-AB, United States
 5  of America versus Arlan Wesley Harrell; John Richard
 6  Brinson, Jr.; Moises Martinez; Keith Allen Lawniczak.
 7          Counsel, please step forward and state your
 8  appearances.
 9          MS. MYERS:  Good afternoon, Your Honor.
10          Devon Myers on behalf of the United States.
11          MS. KUPERSMITH:  Lauren Kupersmith, trial
12  attorney, with the Child Exploitation and Obscenity Section
13  also on behalf of the United States.
14          THE COURT:  Good afternoon.
15          MR. CASTILLO:  Good afternoon as well, Your Honor.
16          Pedro Castillo on behalf of Arlan Wesley Harrell
17  who is present in custody next to me.
18          THE COURT:  Good afternoon to you both.
19          MR. NICOLAYSEN:  Good afternoon, Your Honor.
20          Greg Nicolaysen appearing as counsel for
21  Mr. Brinson who is present.
22          THE COURT:  Good afternoon to you both.
23          MR. FURSTMAN:  Good afternoon, Your Honor.
24          Scott Furstman appearing with Moises Martinez who
25  is present.
```

1          THE COURT: Good afternoon to you both.
2              And last but not least --
3          MR. NISHI: Good afternoon, Your Honor.
4              Thomas Nishi on behalf of Keith Lawniczak who is
5    present.
6          THE COURT: Good afternoon to you both.
7              So we are here for a status conference today.
8              Maybe the government can outline what issues, if
9    any, we need to discuss, if you aware, or maybe you are not
10   aware what the issues are.
11         MS. MYERS: I think we are just discussing a
12   proposed trial date.
13             Some defendants are in favor of moving it, some
14   are not. The government has worked out with at least
15   defense counsel for Harrell and defense counsel for Brinson
16   a substantive motion date that's proposed as well as a trial
17   motion date which is proposed, and the government is aiming
18   to supersede the Indictment by August of 2019.
19         THE COURT: Okay. So what dates are you -- what
20   are the dates that you have proposed?
21         MS. MYERS: Motion -- substantive motions to be
22   filed on August 22nd, oppositions on September 5th, replies
23   on September 19th, and the hearing on those motions on
24   October 11th.
25             And then for the pretrial motion also an expert

1  disclosure date of November 25th.  And this schedule,
2  Your Honor, was in the stipulation that I had sent to
3  defense counsel.  I did not discuss it with them today, but
4  motions in limine to be due December 2nd, oppositions on the
5  23rd of December, replies on January 6th of 2020, and final
6  pretrial conference on January 13th, 2020, at 1:30 in the
7  afternoon, with the trial date of January 28th, 2020.
8              THE COURT:  All right.  Let me make sure I have
9  got all this down.
10             You said January 13th was the final pretrial
11 conference.  We do it on Monday?  Is that your proposal?
12             MS. MYERS:  It's up to the Court, Your Honor.
13 That was just the date that I had picked out of the calendar
14 but whatever is best for the Court.
15             THE COURT:  Okay.  Because I am thinking, if
16 anything, that date should probably be on that Friday which
17 I think is January the 17th.  I am just looking.
18             MS. MYERS:  Yes, Your Honor, the Friday of that
19 week is the 17th.
20             THE COURT:  I will be in the middle of a trial on
21 that week, multi-district litigation case.  But the 28th, I
22 think, at least right now looks good for trial date.
23             Let me hear from the defense.
24             Who wishes to be heard first?
25             MR. CASTILLO:  Your Honor, I will speak on behalf

1  of Mr. Harrell. We do agree with the continuance.
2     Mr. Harrell is willing to waive his Speedy Trial
3  Act rights and agree to the continuance also in open court.
4     As the Court is aware, this is a very serious
5  case. There are mandatory minimums with respect to
6  Mr. Harrell that are charged.
7     The lowest mandatory minimum is a 15-year
8  mandatory minimum. There is a 20-year mandatory minimum and
9  a 30-year mandatory minimum. And also the exposure in terms
10  of the guidelines is way -- much higher than that. So this
11  is a so serious case.
12     THE COURT: What is the extent of the discovery?
13  I want to outline the issues as to why a continuance of this
14  nature is appropriate.
15     MR. CASTILLO: Your Honor, we began to receive
16  discovery in -- I believe it was August of 2017.
17     Mr. Harrell was arrested and brought to court on
18  May 30th of 2017. I was appointed. Discovery was provided
19  again beginning on August 16, 2017. The most recent
20  discovery we received from the government was on April 5th
21  of this year. And during that time, we received several of
22  discovery in increments.
23     As the Court may be aware, this case involves
24  voluminous digital media that were seized -- computers,
25  digital devices, interviews with defendants, including

```
 1   Mr. Harrell.  Investigation overseas is mentioned in the
 2   Complaint, cooperating witnesses, and forensic analysis of
 3   all the digital media that was seized.  It has been going on
 4   for quite a bit of time, but we need the time.
 5             It's, again, a pretty serious case.  I have had a
 6   forensic expert begin to evaluate the evidence which is
 7   located at the Homeland Security office in Long Beach.
 8             She went there twice to the offices of the
 9   investigating agents and reviewed the discovery, digital
10   media.
11             But again, we just need more time in light of the
12   seriousness of the case, and we'd ask that the Court grant
13   us a continuance.
14             THE COURT:  You agree as to those dates.  All
15   right.  Let me just see.
16             Who is next?
17             Mr. Nicolaysen.
18             MR. NICOLAYSEN:  Yes, Your Honor, thank you.
19             Mr. Brinson declined to sign the speedy trial
20   stipulation.  I am asking for the continuance to the dates
21   that have been outlined.
22             In Mr. Brinson's particular case, we have two
23   suppression motions that I have now finalized that I expect
24   to be filing by the August 22nd deadline, one of them a
25   post-arrest statements which is an important part of the
```

1   government's case.
2          The other, the seizure of evidence during the
3   search of his vehicle, one of those items is a laptop.  The
4   government recently informed me that they had been able to
5   access the contents of the laptop, and I will be receiving a
6   forensic report of the government's analysis.
7          It is significant in terms of the government's
8   case in chief, and it now requires me to have a CJA
9   appointed forensic analyst from my end as well.
10         These are among the reasons why the extended dates
11  are necessary specifically for Mr. Brinson.
12         So I do ask Your Honor to grant the agreed-upon
13  continuance among counsel.  To the extent Mr. Brinson
14  represents to the Court today that he opposes the
15  continuance, I do ask this Court to overrule that objection
16  and allow the January 28th date to be set.
17         THE COURT:  All right.  Thank you.
18         Let's hear from Mr. Furstman.
19         MR. FURSTMAN:  Your Honor, we would -- on behalf
20  of Mr. Martinez, we would submit and agree on the dates
21  proposed, and Mr. Martinez would be prepared to sign a
22  speedy trial stip to that extent.
23         THE COURT:  Last but not least, Mr. Nishi.
24         MR. NISHI:  With respect to my client, my client
25  stands in a different stead than the other defendants.  He's

1  not involved --
2          THE COURT:  Do me a favor.  I don't think --
3  that's better.
4          MR. NISHI:  He's not named in the Indictment as
5  being a participant in the Website activities.  His case is
6  very short in comparison to the others.
7          He is opposed to every continuance so far, and he
8  stands by that objection.  He would agree to a short
9  continuance because we have been putting over the motions.
10 So we would need some time to work on the motions.
11         But, frankly, we don't see going into January as
12 necessary as far as my client is concerned.
13         THE COURT:  So you object as well?
14         MR. NISHI:  Yes.
15         THE COURT:  All right.  Let me have one moment,
16 please.
17         Obviously, we want to ensure that both sides are
18 adequately represented and also that they have a speedy
19 trial.
20         But this case is a serious case.  I believe the
21 government had indicated, at least in prior hearings, and,
22 Ms. Myers, you may be able to refresh my recollection.
23 What's the volume of evidence?  Electronic evidence?  What
24 are we talking about in terms of gigabytes, terabytes,
25 things of that nature?

```
 1            MS. MYERS:  I will let my colleague speak to the
 2   volume of electronic data.  In terms of discovery pages that
 3   we've produced, it's in excess of 80,000 pages.
 4            THE COURT:  Did you say 80,000?
 5            MS. MYERS:  Yes, Your Honor.
 6            I also anticipate another production to go out,
 7   hopefully, within the next week.  I will spend this weekend
 8   working on it.
 9            And a lot of the discovery, as Your Honor is
10   probably aware, is produced pursuant to protective order
11   because there is a large number of child victims in this
12   case.  It's very sensitive.  So, again, that mandates the
13   slower review with defense counsel and defendants because of
14   the protective order.
15            THE COURT:  What do you anticipate the volume of
16   this next batch of discovery, in the thousands of pages or
17   something far less?
18            MS. MYERS:  I think it will probably be less than
19   a thousand, Your Honor.  But again, the bulk of it, I
20   believe, will be pursuant to protective order, including an
21   additional forensic interview.
22            THE COURT:  Thank you.
23            MS. MYERS:  Did Your Honor want to hear from
24   Miss Kupersmith about the volume of electronic data?
25            THE COURT:  Yes, please.
```

```
 1             MS. KUPERSMITH:  Your Honor, just to address the
 2   electronic discovery in this case, I don't have an exact
 3   figure, but we're in the terabyte range, likely dozens of
 4   terabytes in terms of the number of devices that were seized
 5   and have already been processed and forensic reports being
 6   provided, and a lot of those need to be reviewed, obviously,
 7   at the government's facility.
 8             But some files have been made available that could
 9   be -- that were allowed to be discoverable outside of that,
10   and that contributes to the high volume of pages.  But in
11   terms of electronic files, we're definitely in the dozens of
12   terabytes.
13             THE COURT:  Thank you.  That's helpful.
14             The reason why I ask is, given the volume and,
15   obviously, the attorneys need to review it to prepare for
16   the defense on behalf of the clients, that takes some time,
17   and at least a number of counsel on the defense have
18   indicated such.
19             And I am looking at the Speedy Trial Act.  I
20   believe under (b)(6) of 3161 -- sorry, 3161(b)(6), there is
21   grounds for excludable time for reasonable period of delay
22   when defendants joined for trial with a co-defendant as to
23   whom the trial has not run and there is no motion for
24   severance has been granted.
25             So we have got four defendants.  I'm not going to
```

1  sever this case -- at least I'm not aware of any reason to
2  sever the case at this time.  So it's all for one, one for
3  all, so to speak.
4          There does seem to be more than adequate
5  grounds -- at least three out of the four defense counsel
6  have indicated they need the time to review all this
7  additional evidence.
8          Mr. Nicolaysen has indicated, in addition in light
9  of some potentially new evidence he may need to hire
10 forensic expert, and so that's going to take some time.
11         And so while I respect -- and I am sensitive to
12 the fact that the parties want to get this matter resolved
13 sooner than later -- I'm not going to sever the trial as it
14 relates to any of these defendants.  There is no motion
15 pending in that regard.
16         And I am inclined to go along with the proposed
17 dates with the exception of the January 13th date.  I would
18 propose that that date, which I think was set for -- was
19 that -- what date did you propose for January 13th?  What
20 was the hearing date for that?
21         MS. MYERS:  The final pretrial conference,
22 Your Honor.
23         THE COURT:  So I would propose that final pretrial
24 conference be held on January the 17th.  We will probably do
25 it at 1:00 P.M. because I think I am going to be in trial.

```
 1   So I will try to meet with you all in between that time.
 2              And so I am inclined to go forward with those
 3   dates.  I have asked the government to submit the proposed
 4   stipulation and order.
 5              I will let each and every one of you individual
 6   defendants know you have the right to have a trial within 70
 7   days.  That can only go beyond that date if there is grounds
 8   for excludable time.  Some of that grounds includes
 9   preparation -- one example or examples of that would be
10   preparation of counsel.
11              A number of your counsel have indicated that you
12   need additional time, with the exception before Mr. Nishi
13   who has indicated he may need a shorter amount of time than
14   the others.
15              Given the volume in this case, given the stakes in
16   this case, I am inclined to agree with the government's
17   proposal to continue the case.  So I want to let you all
18   know that the trial date will be moved to
19   January 28th, 2020.
20              Now, I will tell the government.  I would hope and
21   expect that that is a firm date.  We're now -- this case has
22   been going on for a while.  And recognizing it -- it's a
23   serious case, and so there are some reasons behind that.
24              But I'd like to keep that January 28th date as a
25   go.  I don't have any other trials set on that date.  So
```

```
 1   we're going to -- I am going to do my best to keep my
 2   calendar clear.  This case would take the absolute highest
 3   priority given the nature of the charges, and so let's try
 4   to keep that date firm on January 28th, 2020.
 5             Anything further from either side?
 6             From the government?
 7             MS. MYERS:  Nothing from the government,
 8   Your Honor.
 9             THE COURT:  From any defense counsel?
10             Mr. Nishi?
11             MR. NISHI:  Yes, Your Honor.
12             My client has been incarcerated in San Bernardino
13   County Jail the entire time.
14             He has no access to any computer.  I think it's
15   time that he be moved.  We're getting closer to trial.
16             He needs to really look at it, at the stuff
17   himself to digest it fully.  We've tried the best we can
18   under the circumstances, but he should be able to see all
19   the discovery by himself.
20             And, again, we're talking about a lot of material.
21   And the only way he can do that is to use a computer which
22   is not available to him in San Bernardino.
23             THE COURT:  What about -- isn't a lot of this
24   evidence subject to a protective order?  And if so how does
25   that factor into your request?
```

```
 1              MR. NISHI:  Some of it is; some of it isn't.
 2              The parts that are under protective order we could
 3   show it to him.  We just can't leave it with him.  But the
 4   other stuff, which is still quite a bit, we can't, and
 5   that's the stuff he should be able to go through it himself.
 6              THE COURT:  Mr. Nicolaysen.
 7              MR. NICOLAYSEN:  Your Honor, thank you.
 8              My client, Mr. Brinson, is at the West Valley
 9   Detention Center, which is part of the San Bernardino County
10   jail system.
11              And the problems Mr. Nishi raised apply to
12   Mr. Brinson as well.  The protective order precludes us from
13   giving our clients their own copies of sensitive
14   information.  But we are permitted to sit with them and
15   review it as long as we don't give them their own copies.
16              We can do none of that either in San Bernardino or
17   West Valley.  We're separated by screens, and so we can't
18   sit with a computer.
19              At MDC we can.  We sit in a private meeting room
20   and put images or documents up on the screen, we take the
21   discovery on the thumb drives and externals when we leave.
22   That's the type of meeting environment that we need for this
23   case.
24              I do understand Your Honor is not in a position to
25   order transfers, but I do ask that the Court recommend to
```

```
 1   the marshals -- and we have marshals here -- to see what
 2   might be done to have these two defendants -- or maybe all
 3   the defendants for that matter, brought back to MDC.
 4             Certain cases have specialized discovery review
 5   needs.  This is one of them.  When a case of this nature is
 6   so heavily burdened by protective orders, for legitimate
 7   reasons, we, the attorneys, have to spend that time with our
 8   clients.  We just have to do it.
 9             And one option that is available when they are in
10   San Bernardino or West Valley -- and the marshals are
11   extremely nice about this -- they bring the clients to the
12   Roybal lockup.
13             It is an extremely nice thing that the marshals
14   do, but it doesn't lend itself to going over documents on
15   the computer.
16             You can hold your laptop up to a screen in the
17   Roybal lockup.  To a degree you can do it, but it is
18   extremely burdensome, and there is so much volume in this
19   case that we just don't have that logistical ability.
20             Bottom line, MDC's private rooms with its own
21   computer screen is the only viable way of meeting with our
22   clients.  So we ask the Court to make that recommendation
23   for a transfer.
24             THE COURT:  Have you explored whether or not there
25   can be transport from the San Bernardino facility to MDC on
```

```
 1   specific dates and times for that purpose?  Has that been
 2   explored?
 3           MR. NICOLAYSEN:  The marshals won't transport from
 4   West Valley or San Bernardino to MDC.  That's not an option.
 5   To Roybal, yes.
 6           But the Roybal setting nonetheless has a screen
 7   separating counsel from the defendant.  So even if we bring
 8   our laptop into the Roybal lockup, for this type of case
 9   where you have so much material on a laptop screen that you
10   need the defendant to see because I am not going to slip
11   documents under the screen to him when I am subject to this
12   kind of protective order.  It's just not a suitable meeting
13   environment.
14           THE COURT:  Miss Myers, I know you stood up
15   earlier.  Yes.  Is there something you wish to say?
16           MS. MYERS:  Yes, Your Honor.
17           There is a concern.  I mean, I think, as I
18   understand it, a lot of the defendants have been -- that are
19   in pretrial detention have been moved out of MDC because it
20   is being renovated.  So there are specific constraints in
21   place.
22           The concern for us on the government side is we
23   have a no contact order in place between the defendants.
24   It's problematic that the two defendants are in
25   San Bernardino.
```

1       We've tried to address that with the marshals
2  already.  There is an issue where Defendant Lawniczak and
3  Defendant Brinson were sending letters to each other through
4  a third party and -- through prison.
5       So to the extent you are going to order somebody
6  relocated, I would emphasize the no contact order be
7  emphasized.
8       THE COURT:  Look.  The reality is all I can do is
9  make a recommendation.  And the no contact order has already
10 been in place, and defendants know or -- well, if you don't
11 know now you know you can't contact each other.
12      If you choose to do otherwise, there will be
13 consequences to it, and we'll cross that bridge if and when
14 we need to.
15      I can make a recommendation that they be
16 relocated, but that seems to -- that will cause -- it's
17 certainly going to be a running conflict or potential
18 conflict with the no contact orders that defendants have
19 with each other.  So I can make the recommendation, but I am
20 not sure realistically that is really going to do anything.
21      And I need to think more about this as to what
22 other alternatives, if any, there are relative to that
23 because, if they're not going to take them to MDC for
24 purposes of sitting in a computer room, then Roybal may be
25 the only option.  It's suboptimal, but that may be the only

```
 1   option.
 2           I will make the recommendation that the marshals
 3   will consider relocating each of the defendants so they can
 4   facilitate contacts with their counsel, and I will think
 5   about if there is any other alternatives that we can do to
 6   facilitate the representation.
 7           MR. NICOLAYSEN:  Thank you, Your Honor.
 8           MR. CASTILLO:  Your Honor, with respect to
 9   Mr. Harrell, he is in Santa Ana jail.  We request the Court
10   not order that he be moved.
11           THE COURT:  And to the extent I wasn't clear, just
12   as it relates to Mr. Lawniczak and Mr. Brinson only.  So I
13   apologize for not making that clear.
14           Anything further?
15           All right.  So then I will see you all at our next
16   trial date, which appears it will be on or about --
17           MR. NICOLAYSEN:  It will be the motions hearing on
18   October 11, Your Honor.
19           THE COURT:  On October 11.  Thank you all.
20           MR. NICOLAYSEN:  Thank you for the Court's time.
21           MS. MYERS:  Thank you, Your Honor.
22       (Proceedings concluded at 2:01 p.m.)
23                          --oOo--
24
25
```

CERTIFICATE

I hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing is a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Date: January 19th, 2022.

*/S/ CHIA MEI JUI* _____

Chia Mei Jui, CSR No. 3287